595 A.2d 575

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**William B. TILLEY, Appellant.**

Supreme Court of Pennsylvania.

Argued Dec. 3, 1990.

Decided July 18, 1991.

Reargument Denied Oct. 10, 1991.

128

Bernard L. Siegel, Philadelphia, for appellant.

Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Chief, Appeals Div., Donna Zucker, Philadelphia, Robert A. Graci, Chief Deputy Atty. Gen., Harrisburg, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS and CAPPY, JJ.

132

■■■■■■

## OPINION OF THE COURT

CAPPY, Justice.

This is an automatic direct appeal[1] from a sentence of death imposed upon appellant, William B. Tilley by the Court of Common Pleas of Philadelphia, following his conviction of murder in the first degree. We affirm the judgment of sentence of death.

A jury found Tilley guilty of murder in the first degree,[2] robbery,[3] burglary,[4] and possession of an instrument of crime.[5] A separate penalty hearing was held regarding the murder conviction. The jury found one aggravating circumstance and no mitigating circumstances, and fixed Tilley's penalty thereon at death. Sentencing was deferred pending the receipt of post-trial motions, which were subsequently filed, argued and denied. Tilley was sentenced to death[6] on the homicide charge, imprisonment of ten to twenty years on the robbery charge consecutive to the sentence of death, imprisonment of ten to twenty years on the burglary charge consecutive to the sentence of death and concurrent with the robbery sentence, and imprisonment of two and one-half to five years for possession of an instrument of crime consecutive to the sentence of death and the robbery and burglary sentences.

■■■■ As in all cases where the death penalty has been imposed this Court must conduct an independent review of the sufficiency of the evidence without regard to whether the appellant has challenged the conviction on that ground. *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 26–27 n. 3, 454 A.2d 937, 942 n. 3 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327, *reh'g denied,* 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). The test for establish-

1. See, 42 Pa.C.S.A. §§ 722(4), 9711(h)(1), Pa.R.A.P. 702(b) and 1941.
2. 18 Pa.C.S. § 2501(a).
3. 18 Pa.C.S. § 3701(a)(1)(i).
4. 18 Pa.C.S. § 3502(a).
5. 18 Pa.C.S. § 907.
6. 42 Pa.C.S. § 9711.

ing sufficiency is whether the evidence, and all reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish all the elements of the offense(s) beyond a reasonable doubt. *Commonwealth v. Rhodes*, 510 Pa. 537, 510 A.2d 1217 (1986). The following facts established by the evidence produced by the Commonwealth clearly satisfy this test.

Philadelphia Police Officer Robert Daiss spent the evening of July 27, 1985, at the home of his partner, Sergeant Steven Arch and his wife. At approximately 11:00 p.m. Officer Daiss returned to his home on Roosevelt Boulevard in the City of Philadelphia. Soon thereafter, Officer Daiss was shot to death in his basement. The Philadelphia Police discovered his body on July 30, 1985. A video cassette recorder, briefcase and service revolver were missing from Officer Daiss' residence.

During the ensuing investigation, the Philadelphia Police were notified that Tilley had been bragging about the murder of Officer Daiss to numerous friends and acquaintances. Kim Wolfson, one of the many friends to whom defendant had confessed his crime, told some of her co-workers at a bank about Tilley's admission of responsibility for the murder. A bank manager overheard this conversation and telephoned the Philadelphia Police.

On August 2, 1985, Tilley was arrested for the murder of Officer Daiss and given Miranda warnings. Tilley waived his Miranda rights and indicated that he would talk to the Philadelphia Police. Thereafter, he was interrogated by two Philadelphia Police Officers for approximately three and one-half hours during which time he also spoke with three witnesses to whom he had allegedly admitted responsibility for the murder of Officer Daiss. During this initial interrogation, he answered general questions but did not admit his involvement in the murder of Officer Daiss. Immediately thereafter, two other Philadelphia Police Officers commenced interrogation of Tilley. They advised him of his Miranda rights again, and after approximately ten

minutes, Tilley gave a statement admitting that he had killed Officer Daiss. A motion to suppress this statement was subsequently denied by the trial court and is not a subject of this appeal.

At trial, Tilley testified that he had forcibly entered the home of Philadelphia police officer Robert Daiss with the intention of committing a burglary. Tilley stated that during the burglary Officer Daiss returned home and he fled to the basement with a .38 caliber service revolver that he had removed from Officer Daiss' bedroom. He was unable to exit the home through the basement so he hid behind a refrigerator. Officer Daiss then proceeded into the basement with his handgun drawn whereupon Tilley sprang from behind the refrigerator and shot Officer Daiss in the chest and in the jaw/neck. Thereafter, as Officer Daiss lay paralyzed and unable to speak, Tilley shot Officer Daiss in his left nostril to assure that he was dead.[7]

Tilley also stated that after he killed Officer Daiss, he secured the keys to Officer Daiss' home in order to return later whereupon he took a video cassette recorder, and a briefcase containing seven gold rings, four bags of marijuana, photographs of persons involved in drug transactions, and cash.[8] Thereafter, the Philadelphia Police were able to confiscate the video cassette recorder and some of the rings that had been stolen from Officer Daiss' home. These items were obtained from people who stated that Tilley had given the items to them. Other witnesses testified that the remaining contents of Officer Daiss' briefcase were divided among several individuals in order to secure their silence concerning Tilley's commission of the murder of Officer

7. Tilley testified that after he shot Officer Daiss the first two times Officer Daiss attempted to reach for his gun while stating that he was going to get Tilley, which was why he had fired the third shot. However, the Medical Examiner's testimony indicated that the gunshot to the chest would have paralyzed Officer Daiss, and that the gunshot to the jaw/neck would have rendered Officer Daiss incapable of speaking.

8. The victim was a member of the elite drug enforcement squad of the Philadelphia Police Force, The Five Squad, which has since been discontinued.

Daiss. In addition, no less than six witnesses testified at trial that Tilley had confessed to them that he had killed Officer Daiss during the commission of the robbery/burglary. It is clear that this evidence was sufficient to sustain Tilley's convictions.

Through appellate counsel, Tilley asserts numerous contentions of trial error and ineffective assistance of counsel.[9] First, Tilley argues that he was denied his right to a speedy trial under the United States and Pennsylvania Constitutions and in violation of Pa.Crim.R.P. 1100 because his trial was not held until 695 days after his arrest. This argument is meritless.

 In determining whether Tilley's constitutional right to a speedy trial has been violated his conduct and that of the Commonwealth must be balanced in light of: (1) The length of the delay; (2) the reasons for the delay; (3) Tilley's assertion of his right; and (4) the prejudice, if any, he has suffered. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Commonwealth v. Smith*, 524 Pa. 72, 569 A.2d 337 (1990). The evidence presented at Tilley's Rule 1100 hearings clearly shows that the Commonwealth was prepared to proceed to trial at all times, and that Tilley caused virtually all of the trial delay through numerous continuances, unavailability of counsel, and changes in counsel.[10] The trial delay actually caused by the court was minimal, and the Commonwealth was clearly diligent in its efforts to bring Tilley to trial. Furthermore, Tilley did not request dismissal based upon this alleged speedy trial violation until nearly a year after the original run date.

9. Tilley has also raised numerous issues simultaneously through a supplemental *pro se* brief. We have reviewed all of these claims to the extent that we were able to discern valid claims of error having some basis in the law, and none of these claims have any merit. These issues are set forth fully in appendix "A" attached hereto.

10. The record indicates that Tilley was responsible for approximately nineteen of the twenty-two months of delay.

136

■ Finally, Tilley's assertion that he was prejudiced by the delay in that Officer Daiss' shirt was not available for purposes of refuting the Medical Examiner's opinion that Officer Daiss suffered a hard contact wound is without merit. Tilley never requested the production of this shirt before or during trial, and his mere speculation that this shirt may now be unavailable cannot be used to bolster a speedy trial claim. Accordingly, the balancing plainly weighs with determinative heaviness against his claim. Thus, we reject Tilley's claimed violation of his right to a speedy trial under the United States and Pennsylvania Constitutions. Similarly, for the foregoing reasons and because Pa.R.Crim.P. 1100(c)(3) specifically provides that such delay caused by Tilley must be excluded from the computation of the period for commencement of trial, Tilley's rights under Pa.R.Crim.P. 1100 were not violated.

■ Second, Tilley argues that the trial court erred in denying his request for jury instructions on voluntary intoxication because there was sufficient evidence of record to support the defense of intoxication. This contention is meritless. In order for Tilley to have been entitled to a charge on voluntary intoxication there must have been evidence that he was "overwhelmed or overpowered by alcoholic liquor to the point of losing his ... faculties or sensibilities...." *Commonwealth v. Reiff,* 489 Pa. 12, 15, 413 A.2d 672, 674 (1980). While there was evidence that Tilley consumed some alcohol during the afternoon of July 27, 1985, and at some point appeared drunk to one of his friends, this is certainly not sufficient to support the conclusion that he was "overwhelmed or overpowered" to such an extent as to be incapable of forming the requisite specific intent to kill Officer Daiss. In fact, Tilley's testimony showed that he was thinking and acting coherently and methodically during the entire ordeal. Accordingly, as there was no basis for such an intoxication defense the trial court correctly chose not to provide the requested voluntary intoxication instructions.

■ Third, Tilley argues that the trial court erred in refusing to declare a mistrial after the prosecutor had raised the existence of prior criminal acts of Tilley. This contention is also meritless. Specifically, on re-direct examination of one of Tilley's friends, the prosecutor asked if she knew Tilley to burglarize houses. After a timely objection to this question by defense counsel the trial court initiated a sidebar discussion where the prosecutor argued that defense counsel had opened the door for such testimony by asking the witness on cross-examination if she knew whether Tilley usually carried a gun. The trial court sustained the objection, denied Tilley's request for a mistrial because the witness did not answer the question, and gave the following curative instruction:

> You will disregard the last question by the District Attorney. Remember as I told you before at the very commencement of this trial, I told you that you should not assume that a fact may be true merely because the lawyer asks questions which assumes or suggests that a fact is true. So I am striking from the record that last question. (R. 131–132).

This instruction was clearly adequate to cure the possible inference of prior criminal acts which could have prejudiced Tilley, and he did not object to the adequacy of the curative instruction at trial. Simply, there was no evidence of Tilley's prior criminal record elicited since the trial court sustained Tilley's objection and the witness did not answer the question. *Commonwealth v. Williams*, 524 Pa. 218, 570 A.2d 75 (1990); *Commonwealth v. Morris*, 513 Pa. 169, 519 A.2d 374 (1986).

■ Additionally, Tilley claims that he was further prejudiced by this unanswered question because the jury, during its deliberation on penalty, asked a question concerning mitigating circumstance number one, 42 Pa.C.S. § 9711(e)(1) (no significant history of prior criminal convictions). This claim is also meritless. The jury returned with a question that read "we have no information of any prior arrests or criminal convictions in order to consider mitigating circum-

138

stance number one." (R. 46). The trial court responded by repeating the applicable burdens associated with proving aggravating and mitigating circumstances, and then stated that the jury had answered their own question because they had indicated that they had found no evidence in support of mitigating circumstance number one, and thus, could not find that mitigating circumstance.

Tilley contends that this exchange between the jury and the trial court during the penalty phase, when coupled with the prior unanswered question by the prosecutor concerning whether the witness knew Tilley to burglarize houses, which occurred during the guilt phase of the proceedings, led the jury to believe that Tilley *did* have a prior record and further, to speculate that it involved burglaries. We disagree.

The jury's question did not indicate that they were presuming a prior record based upon the unanswered question by the prosecutor concerning other burglaries, but rather, that they understood there had been no evidence presented in support of the mitigating circumstance of a lack of a significant history of prior criminal convictions, 42 Pa.C.S. § 9711(e)(1). Accordingly, the trial court did not err in denying Tilley's request for a mistrial.

Fourth, Tilley argues that the trial court erred in refusing to instruct the jury on justification (self-defense). This instruction was correctly denied by the trial court as the defense was not supported by the evidence. Pursuant to 18 Pa.C.S. § 505:

> The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

First, and most obvious is the lack of sufficient evidence to support a finding that Tilley was protecting himself from the use of unlawful force by Officer Daiss. Officer Daiss was simply acting as a reasonable person would when

searching their own home for an intruder. Officer Daiss clearly had a right to carry a firearm while conducting the search of his home, and he did nothing more than proceed into the basement with his handgun drawn.

In addition, this Court has consistently held that in order to establish the defense of self-defense it must be shown that

(a) the slayer was free from fault in provoking or continuing the difficulty which resulted in the slaying;

(b) that the slayer must have reasonably believed that he was in imminent danger of death or great bodily harm, and that there was a necessity to use such force to save himself therefrom; and

(c) the slayer did not violate any duty to retreat or to avoid the danger.

*Commonwealth v. Butler*, 516 Pa. 522, 524, 533 A.2d 992, 994 (1987); *Commonwealth v. Simmons*, 504 Pa. 565, 569, 475 A.2d 1310, 1313 (1984); *Commonwealth v. Reiff*, 489 Pa. 12, 15, 413 A.2d 672, 674 (1990); *Commonwealth v. Black*, 474 Pa. 47, 53, 376 A.2d 627, 630 (1977). Clearly, the evidence presented at trial was also insufficient to establish any of these factors.

Tilley was unquestionably the aggressor. He forcibly entered the home of Officer Daiss with the intention of committing a burglary, and then, when he believed that he was about to be discovered by Officer Daiss, Tilley sprang from his hiding place and shot Officer Daiss three times. Tilley was clearly not free from fault in provoking or continuing the burglary which resulted in the slaying. Furthermore, Tilley could not reasonably have believed that Officer Daiss intended to kill him or cause great bodily harm. While it is true that Officer Daiss did not request police "back-up" from the nearby station or request Tilley to come out or give himself up; and that Officer Daiss owned many firearms, and that he had turned and begun to raise his gun when he approached Tilley's hiding place, these facts do not reasonably support the conclusion that

140

Officer Daiss intended anything beyond the arrest of an intruder.

■■■ Tilley also presented no evidence to establish that the force used was necessary to save himself. The evidence established that one of the first two shots (chest and jaw/neck) had paralyzed Officer Daiss, and Tilley failed to establish that the third shot delivered to the nostril area of Officer Daiss' face was necessary in order to save his life or prevent great bodily harm. Finally, Tilley clearly violated his duty to retreat or avoid the danger. While it is true that Tilley did attempt to exit the premises through the basement when Officer Daiss came home, his conduct thereafter was violative of his duty to retreat or avoid the danger. Instead of peacefully surrendering when Officer Daiss approached, Tilley chose to lie in wait behind a refrigerator, and when sure that he was about to be discovered, to spring from his hiding place and open fire.

Accordingly, viewing the evidence in the light most favorable to the Commonwealth, the evidence adduced at trial could not afford the jury any reasonable basis for finding self-defense. Such an instruction would have only served to confuse the jury since the legal principle had no application to the facts, and thus, the trial court correctly refused such a charge. *Commonwealth v. White*, 490 Pa. 179, 415 A.2d 399 (1980).

■■■ Similarly, Tilley's related claim that trial counsel was ineffective for failing to request jury instructions on "unreasonable belief" voluntary manslaughter pursuant to 18 Pa.C.S. § 2503(b) must also fail. 18 Pa.C.S. § 2503(b) provides:

**(b) Unreasonable belief killing justifiable.**

A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable.

Tilley's assertion misperceives the elements necessary to establish unreasonable belief voluntary manslaughter, which is sometimes loosely referred to as "imperfect self-defense." This self-defense claim is imperfect in only one respect—an unreasonable rather than a reasonable belief that deadly force was required to save the actor's life. All other principles of justification under 18 Pa.C.S. § 505 must have been met before Tilley would have been entitled to jury instructions on unreasonable belief voluntary manslaughter. As discussed above, the evidence presented at trial failed to establish any of the factors necessary to support Tilley's claim of self-defense. Accordingly, Tilley's claim that he was entitled to jury instructions on unreasonable belief voluntary manslaughter is meritless, and his trial counsel cannot be faulted for having elected not to request the instructions. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1981); *Commonwealth v. Giknis*, 491 Pa. 215, 420 A.2d 419 (1980).

■ Fifth, Tilley argues that the jury instructions of the trial court on robbery were incorrect and insufficient. Specifically, he argues that the trial court failed to define the phrase "in the course of committing a theft," or what acts might be considered a theft, and, as a result, the jury could have been led to convict Tilley of robbery based upon the theft that occurred when Tilley returned to Officer Daiss' home after the murder. This contention is unfounded. The trial court did adequately define the phrase "theft."

Initially, we note that the instructions of the trial court as to robbery were almost identical to the language and definitions contained in section 15.3701A of the Pennsylvania Suggested Standard Jury Instructions. While we have not specifically adopted these standard instructions, and thus, the fact that the instructions in the case *sub judice* parallel this standard is not dispositive of the question, clearly such reliance on this standard by the trial court aids our review of its particular instructions concerning "theft." First, in

connection with the instructions on the offense of burglary the trial court stated:

A person is guilty of theft if he unlawfully takes or exercises unlawful control over movable property of another with intent to deprive him thereof. "Deprive" means to withhold property of another permanently or to dispose of the property so as to make it unlikely that the owner will recover it. Property is anything of value. Movable property is property the location of which can be changed. As to intent, one acts with intent if it is his conscious objective to cause a particular result. Property of another includes property in which any person other than the Defendant has an interest which the Defendant is not privileged to infringe. This is true when the personal property is held by the alleged victim as a custodian for another. (R. 118–119).

Second, in connection with the instructions on the offense of robbery the trial court stated:

In order to find the Defendant guilty of robbery, you must be satisfied that the following two elements have been proven beyond a reasonable doubt. First, that the Defendant inflicted serious bodily injury upon Robert Daiss in the course of committing a theft. And, Second, that the Defendant did so in the course of committing a theft.

For purposes of the crime of robbery, a Defendant acts in the course of committing a theft not only if it occurs in the actual commission of a theft but also in an attempt to commit theft, or in flight after an attempt or commission of theft.

As I have already indicated, you cannot find the Defendant guilty of robbery unless you are satisfied beyond a reasonable doubt that he committed a theft. I have already defined for you what theft is. Summarily, a person commits a theft if he unlawfully takes movable property of another with the intent to deprive him of it permanently. Therefore, if you find the aforesaid elements proven by the Commonwealth beyond a reasonable

doubt, then you should find the Defendant guilty of robbery. Otherwise, you must find the Defendant not guilty of that charge. (R. 120).

Clearly, these instructions were adequate, and if followed by the jury, which must be presumed, *Commonwealth v. Steele*, 522 Pa. 61, 559 A.2d 904 (1989), the jury could not possibly have concluded that the theft involved in the robbery charge occurred after Officer Daiss had been murdered. The infliction of serious bodily injury controls the relevant time for purposes of the theft. Here, the theft of the service revolver as Tilley was attempting to flee is the theft that occurred in connection with the serious bodily injury inflicted upon Officer Daiss. Accordingly, the instructions of the trial court on robbery were not incorrect or insufficient.

Sixth, Tilley argues that the trial court erred at the penalty phase in sending out a verdict sheet that contained a complete listing of all statutory aggravating and mitigating factors.[11] Tilley reasons that the inclusion on the verdict sheet of mitigating circumstance number one, 42 Pa. C.S. § 9711(e)(1) (no significant history of prior criminal convictions), was prejudicial because the jury thereafter stated to the judge that "[w]e have no information of any prior arrests or criminal convictions in order to consider mitigating circumstance number one," to which the judge responded that based upon that finding, the jury could not find mitigating circumstance number one. Tilley argues that this response by the trial court strongly suggested to the jury that Tilley had a significant history of prior convictions, which would support separate aggravating circumstance number nine, 42 Pa.C.S. § 9711(d)(9) (a significant history of felony convictions involving the use or threat of

---

11. We note that Pa.R.Crim.P. 357 now requires that the judge shall set forth on the verdict slip only those aggravating and mitigating circumstances of which there is some evidence. However, this rule was not in effect at the time of Tilley's trial. Furthermore, this rule was simply designed to provide statewide, uniform sentencing verdict slips in death penalty cases, which does not suggest that the former procedure employed in this case was improper.

144

violence to the person), and thus, further justified imposition of the death penalty. This contention is meritless.

There is absolutely no basis for Tilley's speculation that the jury in the case *sub judice* deemed the lack of evidence supporting mitigating circumstance number one to be the equivalent of aggravating circumstance number nine. The verdict slip completed by the jury indicates that it found only *one* aggravating circumstance, a killing while in perpetration of a felony, 42 Pa.C.S. § 9711(d)(6), which was the only one presented by the Commonwealth. The verdict slip also indicates that the jury found *no* mitigating circumstances, which was well within their power. Furthermore, the trial court's response to the jury's question concerning the lack of evidence as to mitigating circumstance number one did not serve to confuse the jury or suggest the existence of aggravating circumstance number nine.

In addition, Tilley's claim that he was prejudiced by the complete verdict sheet is not substantiated by his reference to the death penalty statistics compiled by the Administrative Office of Pennsylvania Courts. It is clear that the jury only considered those aggravating and mitigating circumstances presented, and this Court has repeatedly held that imposition of the death penalty after a jury's finding of a killing while in the perpetration of a felony, with no mitigating circumstances, is not excessive or disproportionate. *See Commonwealth v. Wallace,* 522 Pa. 297, 561 A.2d 719 (1989) (as the statute mandates a sentence of death where the jury finds one or more aggravating circumstances and no mitigating circumstances, the sentence cannot be deemed excessive); *Commonwealth v. Duffey,* 519 Pa. 348, 548 A.2d 1178 (1988). *See generally, Commonwealth v. Blystone,* 519 Pa. 450, 549 A.2d 81 (1988), *aff'd,* 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990).

Seventh, Tilley argues that the trial court erred in its instructions on mitigating circumstances at the penalty phase. He contends that the evidence presented at trial was sufficient to warrant specific oral instructions on miti-

gating circumstances number two, 42 Pa.C.S. § 9711(e)(2) (extreme mental or emotional disturbance), number three, 42 Pa.C.S. § 9711(e)(3) (substantial impairment of capacity to appreciate criminality of conduct or conform conduct to the requirements of law), and number five, 42 Pa.C.S. § 9711(e)(5) (extreme duress). This contention is meritless.

At the penalty phase, Tilley failed to point to *any* such evidence in support of these mitigating circumstances. He cannot now complain that the trial court erred in rejecting his request where it was not adequately brought to the attention of the trial court. Accordingly, the trial court did not err in instructing the jury on only those mitigating circumstances to which there was some evidence. 42 Pa. C.S. § 9711(c)(1)(ii).

Nevertheless, before us, Tilley now sets forth evidence [12] that he claims would have justified the requested instructions. Despite our previous conclusion that the trial court acted properly in response to Tilley's unsupported request during the penalty phase, we have reviewed this evidence and conclude that it was insufficient to support the claimed mitigating circumstances and thus, he was not entitled to the additional instructions thereon.

Tilley also claims that the trial court misinstructed the jury on mitigating circumstance number eight, 42 Pa. C.S. § 9711(d)(8) (any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense), *specifically* because the trial court limited the evidence thereof to *only* the testimony of a prison guard and a social worker. This contention is also

---

12. Tilley argues that his testimony together with that of four Commonwealth witnesses to the fact that he was shaking, crying and extremely upset by the confrontation with Daiss supports a finding of emotional disturbance, 42 Pa.C.S. § 9711(e)(2). Next, he argues that his apparent "justification" for killing Daiss supports a finding that his capacity to conform his conduct to the requirements of the law was substantially impaired, 42 Pa.C.S. § 9711(e)(3). Finally, he argues that his testimony together with that of "numerous witnesses," that he was afraid that Daiss was going to kill him, coupled with his belief that he had to defend himself supports a finding of extreme duress, 42 Pa.C.S. § 9711(e)(5).

meritless. While the trial court did direct the jury's attention to the fact that Tilley presented only these witnesses during the penalty phase, it did not in any way limit the jury's consideration to their testimony as evidenced by the following instruction:

The Defense has also argued Number 8. That was the testimony of the prison guard and the social worker dealing with any other evidence of mitigation concerning the character and record of the Defendant and the circumstances of his offense.

The Commonwealth has the burden of proving aggravating circumstances beyond a reasonable doubt. The Defendant has the burden of proving mitigating circumstances but only by a preponderance of the evidence. This is a lesser burden of proof than beyond a reasonable doubt. A preponderance of the evidence exists where one side is more believable than the other side. *All the evidence from both sides, including the evidence you heard earlier during the trial in chief as to aggravating or mitigating circumstances is important and proper for you to consider.* (R. 38–39) (emphasis added).

In addition, Tilley argues generally that the trial court's instructions on mitigating circumstances gave little guidance to the jury regarding their discretion in this area. This contention is so lacking in specificity that it cannot form a basis for relief especially when, as here, we find that the instructions on mitigating circumstances were adequate.

▮▮▮ Eighth, Tilley argues that the trial court erred in failing to re-instruct the jury at the penalty phase either on "reasonable doubt" or on the elements of aggravating circumstance number six, 42 Pa.C.S. § 9711(d)(6) (killing while in the perpetration of a felony). This contention is meritless. The trial court adequately instructed the jury on the concept of reasonable doubt and the phrase "while in the perpetration of a felony" during the guilt phase of the trial, and neither Tilley nor the jury requested reinstruction on these concepts. Tilley's conclusion that the jury did not understand these concepts is based upon illogical specula-

tion and has no support in the record. Furthermore, there is no dispute that Tilley admitted facts sufficient to support a finding that he had robbed Officer Daiss and burglarized his home. Accordingly, he did not contest the only aggravating circumstance that had to be established by the Commonwealth beyond a reasonable doubt, a killing while in the perpetration of a felony.

Ninth, Tilley argues that the sentence of death should be vacated because the instructions during the penalty phase when coupled with the verdict slip could have precluded weighing of mitigating circumstances in violation of the Eighth Amendment to the U.S. Constitution as in *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). This contention is meritless.

In *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), the U.S. Supreme Court held that a Maryland death penalty statute was unconstitutional because the trial court's instructions in conjunction with the verdict form required a jury to find mitigating circumstances pursuant only to a unanimous vote. Tilley has failed to demonstrate that the instructions and verdict slip at issue in the case *sub judice* are at all similar to those disapproved in *Mills.* The verdict slip and instructions in this case do not present the same problem of precluding an individual juror from considering and weighing mitigating circumstances. This Court has repeatedly held that such instructions do not re-create the error in *Mills. Commonwealth v. Williams,* 524 Pa. 218, 570 A.2d 75 (1990); *Commonwealth v. O'Shea,* 523 Pa. 384, 567 A.2d 1023 (1989); *cert. denied,* —— U.S. ——, 111 S.Ct. 225, 112 L.Ed.2d 180 (1990); *Commonwealth v. Frey,* 520 Pa. 338, 554 A.2d 27 (1989), *cert. denied,* 494 U.S. 1038, 110 S.Ct. 1500, 108 L.Ed.2d 635 (1990).

In addition, Tilley's claim that the comment to Pa. R.Crim.P. 358A, governing the sentencing verdict slip, suggests that the former procedure used in the case *sub judice* violated *Mills* is also meritless. Rule 358A was simply designed to provide a uniform statewide procedure. It does

not conflict with this or prior decisions of this Court on this question.

■ Tenth, Tilley challenges the constitutionality of the Pennsylvania death penalty statute, 42 Pa.C.S. § 9711, under two theories. First, he claims that the statute is unconstitutional because it requires mandatory imposition of the death penalty where the jury has found at least one aggravating but no mitigating circumstances in violation of *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and the Eighth Amendment to the U.S. Constitution. This argument has been specifically rejected by the U.S. Supreme Court in *Blystone v. Pennsylvania*, 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990), and by this Court in *Commonwealth v. Abu–Jamal*, 521 Pa. 188, 555 A.2d 846 (1989), *cert. denied*, —— U.S. ——, 111 S.Ct. 215, 112 L.Ed.2d 175 (1990); *Commonwealth v. DeHart*, 512 Pa. 235, 516 A.2d 656 (1986), *cert. denied*, 483 U.S. 1010, 107 S.Ct. 3241, 97 L.Ed.2d 746 (1987); and *Commonwealth v. Peterkin*, 511 Pa. 299, 513 A.2d 373 (1986), *cert. denied*, 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987).

■ Second, Tilley claims that section 9711 is unconstitutionally vague because it provides for no fixed burden of proof applicable to the weighing of aggravating and mitigating circumstances. This argument was specifically rejected by this Court in *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied.* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), *reh'g denied*, 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983), wherein we held that:

The jury is simply asked to determine whether aggravating circumstances *outweigh* mitigating. 42 Pa.C.S.A. § 9711(c)(iv). Such a standard is not vague. Appellant would prefer a stricter weighing standard but, as we have seen, the Commonwealth has the burden of proving beyond a reasonable doubt *every* element of the offense and of the aggravating circumstances required to sustain a death sentence, and this Court is not at liberty to tamper with the constitutionally permissible legislative judgment

regarding that weighing process. *Id.* 500 Pa. at 66, 454 A.2d at 963.

Similarly, Tilley's related vagueness argument that the jury could have believed that they had to find the mitigating circumstances more believable than the aggravating circumstances before they could even determine if mitigating circumstances existed is equally without merit. The jury's consideration does not involve guess work. It is guided and channeled by a system that focuses on examination of specific aggravating and mitigating factors in deciding whether the death penalty should be imposed. *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied.* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), *reh'g denied,* 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983), *citing, Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). Accordingly, Tilley's constitutional challenges to 42 Pa.C.S. § 9711 are rejected.

Eleventh, Tilley presents six claims of ineffectiveness of trial counsel. In order for Tilley to prevail on a claim of ineffectiveness he must demonstrate that: (1) The underlying claim is of arguable merit; (2) that the particular course chosen by counsel did not have some reasonable basis designed to effectuate his interests; and (3) that counsel's ineffectiveness prejudiced him. *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987). Furthermore, counsel can never be found ineffective for having elected not to raise a meritless claim. *Commonwealth v. Pettus,* 492 Pa. 558, 424 A.2d 1332 (1981); *Commonwealth v. Giknis,* 491 Pa. 215, 420 A.2d 419 (1980).

Three of Tilley's six claims of ineffectiveness are simply restatements of arguments previously addressed and rejected by this court.[13] Accordingly, counsel cannot be found to

13. (1) Trial counsel failed to move for dismissal under Pa.R.Crim.P. 1100; (2) trial counsel failed to request that the trial court reinstruct the jury during the penalty phase on "reasonable doubt" and on the elements of aggravating circumstance number 6, 42 Pa.C.S. § 9711(d)(6) (killing while in the perpetration of a felony); and (3) trial counsel failed to request that the verdict sheet at the penalty phase contain only the mitigating circumstances actually in evidence.

150

be ineffective for electing not to raise these meritless claims. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1981); *Commonwealth v. Giknis*, 491 Pa. 215, 420 A.2d 419 (1980). In addition, we have also previously disposed of Tilley's ineffectiveness claim concerning trial counsel's failure to request jury instructions on unreasonable belief voluntary manslaughter ("imperfect self-defense"). See, the disposition of Tilley's fourth claim herein—the trial court's denial of Tilley's request for jury instructions on self-defense.

Tilley's fifth claim of ineffectiveness is that trial counsel failed to engage in proper pre-trial investigation on matters critical to his credibility as a witness. Specifically, Tilley argues that counsel's failure to obtain and secure expert examination of the shirt that Officer Daiss was wearing when he was murdered or photographs of Officer Daiss's corpse precluded Tilley from refuting the medical examiner's testimony as to the distance from which one of the three close range shots was fired. While this claim is meritless for a variety of reasons, the clearest is the complete lack of prejudice arising from the absence of the shirt and photographs. Clearly, the best that Tilley could hope for would be that the jury would find that one of the shots was fired further from Officer Daiss' body. Such a finding could not alter the first degree murder conviction. Accordingly, as there was no prejudice, counsel cannot be deemed to have been ineffective pursuant to this claim. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987).

Tilley has appended an additional ineffectiveness claim to this verdict sheet claim. Namely, that counsel improperly argued that the court *should* charge on mitigating circumstance number one, 42 Pa.C.S. § 9711(e)(1) (absence of a significant history of prior convictions), which he claims prejudiced him because the jury thereafter believed that he *did* have a significant history of prior convictions. This claim is meritless because there is no evidence that the jury believed that he had a significant history of prior convictions, rather there was only a finding that there was no evidence to support this mitigating circumstance. Trial counsel's strategy was reasonable because there was little evidence in mitigation of Tilley's crime.

 Tilley's sixth claim of ineffectiveness is that trial counsel failed to question prospective jurors during voir dire as to whether they had fixed opinions against a sentence of life imprisonment. This Court has specifically rejected this argument in *Commonwealth v. Jermyn*, 516 Pa. 460, 533 A.2d 74 (1987), wherein we stated:

The mere fact that counsel may not have posed the specific question as to whether a prospective juror would vote for a sentence of life imprisonment in an appropriate case does not justify the conclusion that counsel failed to assure that a fair and impartial jury was selected. Such a talismanic requirement would clearly place form over substance. *Id.*, 516 Pa. at 488, 533 A.2d at 87.

Accordingly, trial counsel cannot be found ineffective for electing not to raise this meritless claim. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1981); *Commonwealth v. Giknis*, 491 Pa. 215, 420 A.2d 419 (1980).

 Finally, pursuant to 42 Pa.C.S. § 9711(h)(3), we have the duty to affirm the sentence of death unless we determine that:

(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor;

(ii) the evidence fails to support the finding of at least one aggravating circumstance specified in subsection (d); or

(iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.

Upon such review, we find that the sentence imposed was not the product of passion, prejudice or any other arbitrary factor. We also find that the evidence supports the jury's finding of the aggravating circumstance specified in 42 Pa.C.S. § 9711(d)(6) (killing while in the perpetration of a felony). In addition, upon our review of the data and information compiled and monitored by the Administrative

152

Office of Pennsylvania Courts,[14] we find no excess or disproportionality when compared to the sentences imposed in similar cases.

Accordingly, we affirm the judgment of sentence of death.[15] Judgment of sentence affirmed.

McDERMOTT, J., did not participate in the consideration or decision in this matter.

### APPENDIX A

(1) The Commonwealth circumvented Pa.R.Crim.P. 1100 thereby causing the court to err in granting an unwarranted extended period of time, and pre-trial counsel was ineffective for failing to object, thus causing trial/post-trial counsel to be ineffective for failing to raise prior counsel's ineffectiveness.

(2) Trial counsel was ineffective in: (a) Failing to identify for the jury what hand the victim held his gun and how that fact would corroborate the appellant's testimony; (b) failing to explain and/or demonstrate to the jury the corroboration between appellant's testimony and the trajectory of the bullets admittedly fired by appellant; and (c) failing to adequately prepare for cross-examination of the medical examiner.

(3) The prosecutor violated appellant's equal protection and due process rights under the Fourth and Fourteenth Amendments to the United States Constitution by proceeding to trial on a general charge of murder after making the decision to death qualify the jury in seeking capital punishment; and trial counsel was ineffective for his failure to request the prosecution amend the bill of information into specifically charging first degree murder thereby causing prejudice to appellant.

(4) Trial counsel was ineffective by failing to make a timely specific objection pursuant to Pa.R.Crim.P. 1119(b),

14. *See Commonwealth v. Frey,* 504 Pa. 428, 475 A.2d 700, *cert. denied,* 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984).

15. The Prothonotary of the Supreme Court is directed to transmit the complete record of the case *sub judice* to the Governor of Pennsylvania. 42 Pa.C.S. § 9711(i).

(c) when the trial court in response to a jury question omitted one of the necessary elements before a proper finding of guilty to first degree murder could be made.

(5) Trial counsel was ineffective for failing to request a mistrial and/or cautionary instructions when the prosecutor made impermissible closing arguments during the guilt stage of the trial.

(6) The trial court erred and thereby violated appellant's right not to be placed twice in jeopardy under the Fifth Amendment to the United States Constitution when it imposed consecutive and concurrent sentences on the robbery/burglary convictions when those convictions were the sole basis used and found by the jury to vote for imposition of the death penalty.