J-S44030-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                :            PENNSYLVANIA
                                                  :
              v.                                      :
                                                :
                                                :
RAYMOND L. SPELLER                  :
                                                  :
                Appellant                    :       No. 208 MDA 2022

Appeal from the Judgment of Sentence Entered October 29, 2021
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0005479-2019

BEFORE:   PANELLA, P.J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:        **FILED: APRIL 4, 2023**

Raymond L. Speller appeals from the judgment of sentence following his

convictions for murder in the first degree, possession of a firearm prohibited,

and firearms not to be carried without a license.[1] We affirm.

The trial court summarized the undisputed facts as follows:

> In the mid-morning on September 23, 2019, surveillance cameras
> affixed to buildings in and around the Hillside Apartments in
> Lancaster, PA captured [Speller] shooting to death [the victim,]
> Pedro Almodovar.[1] The cameras also captured the events leading
> up to and following the shooting. The footage shows a red SUV
> pull into a small parking area next to the Hillside Apartments.
> There are two occupants in the vehicle; Mr. Almodovar is sitting
> in the front passenger seat. After pulling into the lot, neither Mr.
> Almodovar nor the driver exit the vehicle. The footage then shows
> a man walk past the SUV and stop briefly by the vehicle before
> proceeding around the corner and entering 369 Howard Avenue,

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(a), 6105(a)(1), and 6106(a)(1), respectively.

located a short distance from the parking area. A few moments later, another man — [Speller] — can be seen walking out of 369 Howard Avenue, up the sidewalk in front of the house, and around the corner to the area where the red SUV was parked. The footage then shows [Speller] walk directly up to the passenger's side of the vehicle and shoot Mr. Almodovar while he is still sitting in the vehicle. The footage depicts [Speller] trying, unsuccessfully, to fire more shots at Mr. Almodovar before the magazine eventually falls out of the gun. [Speller] can then be seen picking something up from the ground, turning around, walking back toward 369 Howard Avenue, and, eventually, walking away in the opposite direction of where he shot Mr. Almodovar.

[1] The footage was entered into evidence as "Commonwealth Exhibit 7" during the jury trial in the above-captioned matter.

Police were soon thereafter notified of the shooting and arrived on scene around 11:06 a.m. Responding officers found Mr. Almodovar still in the passenger side front seat with blood coming from his nose and mouth; Mr. Almodovar was unresponsive and attempts to render aid were unsuccessful.

Trial Court Opinion, filed Apr. 13, 2022, at 1-2 (citations omitted).

Speller testified at trial that on the morning in question, he was making breakfast at his girlfriend's house and smoking PCP. N.T. Trial, 5/25/21-5/28/21, at 329-31. He stated that his close friend "Red" came over. *Id.* at 329-30. Speller said that Red told him that Almodovar was outside "getting out of his car to exercise or something like that." *Id.* at 332-33. Speller clarified that in "street lingo, exercise means you can rob somebody, harm somebody, do something to somebody." *Id.* at 338. Speller stated that as soon as Red said Almodovar's name, he "truly believed that [Almodovar] was there for me" and he was scared for his life because he believed Almodovar "wanted [him] dead." *Id.* at 333, 338, 340. Speller testified that he walked

outside and saw Almodovar, but he did not remember shooting him. *Id.* at 340-41. He stated that he "blanked out" and his judgment was affected due to using PCP. *Id.* at 333-34. Speller later admitted during a police interview that he was the shooter. *Id.* at 351.

A jury found Speller guilty of murder in the first degree, possession of a firearm prohibited, and firearms not to be carried without a license. He was sentenced on October 29, 2021, to life in prison without parole plus seven and one-half to 20 years. After sentencing, new counsel was appointed to represent Speller for purposes of appeal. On the tenth day after sentencing, counsel filed a post-sentence motion on November 8, 2021, seeking leave to supplement the motion within 30 days after receipt of the transcripts, which was granted. Counsel subsequently filed a motion indicating that no supplement would be filed. The court denied post-sentence relief on January 14, 2022. This timely appeal followed.

Speller raises the following five issues:

1. Did the trial court err when it denied [Speller's] request for a self-defense jury instruction?

2. Did the trial court err when it denied [Speller's] request for voluntary manslaughter, unreasonable belief jury instruction?

3. Did the trial court err when it did not permit defense counsel to question Det. Nathan Nickel about the decedent victim's violent reputation with law enforcement?

4. Did the trial court err when it limited the questioning of defense witness Ivan Lopez-Diaz to four questions chosen by the trial court, none of which involved substantive communication between decedent victim and Mr. Lopez-Diaz that was relayed to [Speller] about the decedent victim wanting to kill [Speller]?

- 3 -

5. Did the trial court err when it precluded testimony of Ronald Luis about threats made by the decedent victim towards [Speller], as they were relevant to [Speller's] state of mind?

Speller's Br. at 5 (issues renumbered for ease of disposition).

Speller first argues the court erred in denying his request for a jury instruction on self-defense. He contends he was fearful of Almodovar due to prior threats Almodovar made against him and believed he was in imminent danger when Almodovar was in the parking lot outside of the apartment. Speller's Br. at 18-19. Speller alleges that when his friend, Red, told him that Almodovar was there to "exercise," he believed that meant that Almodovar would do harm to him. *Id.* at 18. According to Speller, he did not violate his duty to retreat because "[t]here was no evidence that [he] could have fled the scene without first being confronted by" Almodovar. *Id.* at 20. Speller concludes that the court wrongfully "usurped the jury [when it] unilaterality decided that self-defense was not a viable defense in this matter." *Id.*

"[O]ur standard of review when considering the denial of jury instructions is one of deference — an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." *Commonwealth v. Baker*, 24 A.3d 1006, 1022 (Pa.Super. 2011) (quoting *Commonwealth v. Galvin*, 985 A.2d 783, 798–99 (Pa. 2009)). "The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration." *Id.* (citation omitted). The court "is not required to give every charge that is requested by the parties and its refusal to give a

requested charge does not require reversal unless the appellant was prejudiced by that refusal." ***Commonwealth v. Brown***, 911 A.2d 576, 583 (Pa.Super. 2006) (citation omitted). Indeed, a "trial court is not obligated to instruct a jury upon legal principles which have no applicability to the presented facts." ***Commonwealth v. Bohonyi***, 900 A.2d 877, 883 (Pa.Super. 2006) (citation omitted). Rather, "[t]here must be some relationship between the law upon which an instruction is requested and the evidence presented at trial." ***Id.*** (citation omitted).

"Before the issue of self-defense may be submitted to a jury for consideration, a valid claim of self-defense must be made out as a matter of law, and this determination must be made by the trial judge." ***Commonwealth v. Chine***, 40 A.3d 1239, 1244 (Pa.Super. 2012) (citations omitted). A claim of self-defense requires evidence of three elements: "(a) [that the defendant] reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) that the defendant was free from fault in provoking the difficulty which culminated in the slaying; and (c) that the [defendant] did not violate any duty to retreat." ***Commonwealth v. Mouzon***, 53 A.3d 738, 740 (Pa. 2012) (citation omitted) (alteration in ***Mouzon***); ***see also*** 18 Pa.C.S.A. § 505(a).

Here, the court determined that no instruction on self-defense was warranted because there was no evidence that Speller had acted in self-defense. The court stated:

> The Commonwealth's evidence showed that Mr. Almodovar sat defenseless in a parked car and posed absolutely no threat to [Speller] when [Speller] shot him. Further, the surveillance footage captured by the cameras affixed to the Hill[side] Apartments showed [Speller] violating his duty to retreat or seek safety when he left his residence and walked up the sidewalk and around the corner toward where Mr. Almodovar sat. Indeed, the contrary is true. [Speller] left a place of safety to specifically confront and shoot an unarmed individual. [Speller] was also the sole aggressor; during the entirety of the incident, Mr. Almodovar remained seated in a parked vehicle around the corner from [Speller's] residence. Officers who observed Mr. Almodovar's dead body in the car described his post-mortem position – sprawled toward the back driver's side of the vehicle – as indicating that Mr. Almodovar attempted to retreat or escape when [Speller] confronted him.
>
> ***
>
> During his trial testimony, [Speller] also readily admitted that [he] left his residence and walked up the sidewalk and around the corner to the parking area, then directly up to where Mr. Almodovar sat, shot him once, and tried to fire more shots.

Trial Ct. Op. at 11-12.

Our review of the record confirms the court's finding that there was no evidence that would have permitted the jury to conclude that Speller acted in self-defense. Speller had no justification for killing Almodovar at a moment when he posed no threat to him, based merely on a belief that Almodovar allegedly threatened Speller in the past, and Speller did not demonstrate that he was in immediate danger that necessitated protection by force. Moreover, there was no evidence that Speller was free from fault in provoking the incident and that he did not violate his duty to retreat. The opposite is true. The only evidence was that he voluntarily left his girlfriend's apartment and approached Almodovar and shot him, when Almodovar never got out of his

vehicle, never approached Speller, and never communicated with Speller. Thus, the court did not abuse its discretion in denying Speller's request for a jury instruction on self-defense.

Speller's second issue challenges the trial court's denial of his request for an "unreasonable belief" voluntary manslaughter jury instruction. He argues, again, that he feared Almodovar because he had allegedly threatened his life before. Speller's Br. at 22. Speller maintains that whether that belief was unreasonable was a question for the jury and that the court improperly usurped the jury's role by refusing a voluntary manslaughter jury instruction. ***Id.***

We reiterate that our standard of review when considering a denial of a jury instruction is an abuse of discretion. ***Baker***, 24 A.3d at 1022.

Voluntary manslaughter is "an intentional killing. . . committed as a result of an unreasonable belief in the need for deadly force in self-defense." ***Commonwealth v. Washington***, 692 A.2d 1024, 1029 (Pa. 1997); ***see also*** 18 Pa.C.S.A. § 2503(b). It is sometimes referred to as "imperfect self-defense." ***Commonwealth v. Tilley***, 595 A.2d 575, 582 (Pa. 1991). "This self-defense claim is imperfect in only one respect — an unreasonable rather than a reasonable belief that deadly force was required to save the actor's life." ***Id.*** Indeed, "**[a]ll** other principles of justification under 18 Pa.C.S.[A.] 505" must be met before a defendant is entitled to a jury instruction on unreasonable belief voluntary manslaughter. ***Id.*** (emphasis added); ***see also Commonwealth v. Truong***, 36 A.3d 592, 599 (Pa.Super. 2012) (*en banc*)

(stating "all other principles of self-defense must still be met in order to establish this defense").

As discussed above, the evidence presented at trial failed to establish any of the factors necessary to support Speller's claim of self-defense. Even if Speller unreasonably believed that deadly force was necessary, there was no evidence to support the remaining elements of self-defense, *i.e.*, that Speller was free from fault in provoking the incident and that he did not violate his duty to retreat. Accordingly, Speller's claim that he was entitled to a jury instruction on voluntary manslaughter is meritless.

Speller's third issue challenges the court's decision that precluded his trial counsel from soliciting testimony about Almodovar's violent reputation with law enforcement. At trial, the Commonwealth presented Detective Nathan Nickel of the Lancaster City Bureau of Police who testified about his investigation in this matter. On cross-examination, Speller's counsel attempted to ask Detective Nickel whether he had ever investigated Almodovar for violent crimes and whether Almodovar had a reputation for violence. N.T. at 205-06. The Commonwealth objected, and the trial court sustained the objection. **Id.** at 206.

Speller argues that Almodovar's prior acts of violence and "reputation for violence in the community" should have been admissible to support his "reasonableness in being fearful for his life." Speller's Br. at 13-14. He asserts that "[t]he evidence was relevant to [his] state of mind in whether he was

justified in his actions that day or at least to put in perspective [his] unreasonable belief that he was in danger." *Id.* at 14.

The admissibility of evidence is within the discretion of the trial court. ***Commonwealth v. Saez***, 225 A.3d 169, 177 (Pa.Super. 2019). "An abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised was either manifestly unreasonable or the product of partiality, prejudice, bias, or ill will." ***Commonwealth v. Rogers***, 250 A.3d 1209, 1215 (Pa. 2021).

Evidence of a person's character is inadmissible to prove that the person acted in conformity with that character or character trait on a particular occasion. ***See*** Pa.R.E. 404(a). However, in criminal cases, the accused may offer evidence of a victim's pertinent character trait. ***See*** Pa.R.E. 404(a)(2)(B). "[I]n a criminal case where character evidence of the victim is admissible pursuant to Rule 404(a)(2)(B), the accused may establish the victim's relevant character trait by utilizing specific instances of conduct, including the victim's criminal history." ***Commonwealth v. Buterbaugh***, 91 A.3d 1247, 1256 (Pa.Super. 2014) (*en banc*). However, evidence of a victim's violent history is admissible only where self-defense is properly at issue. ***See id.*** (stating "the accused may offer character evidence of the victim **only** where self-defense is alleged") (emphasis in original); ***see also Mouzon***, 53 A.3d at 741 (observing that "when self-defense is properly at issue, evidence of the victim's prior convictions involving aggression may be admitted").

As set forth above, neither self-defense nor imperfect self-defense were proper issues at trial. Accordingly, the court did not abuse its discretion by prohibiting counsel from questioning Detective Nickel about Almodovar's character and reputation for violence.

Speller's fourth issue challenges the court's decision to limit the questioning of defense witness Ivan Lopez-Diaz. Speller sought to present Lopez-Diaz to testify that he told Speller that Speller should be concerned for his life based on his conversations with Almodovar. N.T. at 6. Speller proposed asking Lopez-Diaz four questions:

- "[D]o you know Speller and Pedro Almodovar?" *Id.* at 165.

- "[Did] you ha[ve] any conversations with [Almodovar] concerning Raymond Speller[?]" *Id.*

- "[A]fter speaking with [Almodovar]. . . was it your impression that. . . Raymond Speller should be fearful for his life?" *Id.*

- "Did you communicate that to Raymond Speller prior to September 23rd?" *Id.*

Counsel stated that he would ask, "Nothing more. Nothing less." *Id.* at 166.

After considering Speller's proffered evidence, the court permitted Lopez-Diaz to testify, but stated that counsel could ask the following four questions:

Did you know Pedro Almodovar?

Do you know Raymond Speller?

Did you have conversations with Pedro Almodovar about Raymond Speller?

And prior to Mr. Almodovar's death, did you tell Raymond Speller about those conversations?

- 10 -

*Id.* at 302.

Speller argues that "[b]y limiting the questioning as it did, the trial court improperly excluded the violent and threatening context of the conversation that prompted the witness to fear for Mr. Speller's life." Speller's Br. at 17. According to Speller, "[t]he fact that the witness was worried for Mr. Speller's life and relayed the violent and threatening context of the conversation to Mr. Speller was relevant to [his] state of mind on the date of the shooting." *Id.*

We are mindful that our standard of review on the admissibility of evidence is an abuse of discretion. *Saez*, 225 A.3d at 177. To be admissible, evidence must be relevant. Pa.R.E. 402. However, the trial court "may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403. A trial court has broad discretion to exclude potentially misleading or confusing evidence. *Rohe v. Vinson*, 158 A.3d 88, 95 (Pa.Super. 2016). "The function of the trial court is to balance the alleged prejudicial effect of the evidence against its probative value and it is not for an appellate court to usurp that function." *Lykes v. Yates*, 77 A.3d 27, 33 (Pa.Super. 2013) (citation omitted).

Here, the court decided to limit Lopez-Diaz's testimony because Speller's alleged fear of Almodovar was largely irrelevant since self-defense was not properly at issue during the trial. Trial Ct. Op. at 17. The court also noted that "[b]oth [Speller's] trial counsel and the Commonwealth engaged in

thorough questioning of [Speller] regarding his mental state at the time he killed Mr. Almodovar, as well as the role that [Speller's] alleged PCP high may have played on the morning of September 23rd." *Id.* at 18. The court found that the limited relevance of further questioning Lopez-Diaz regarding Speller's fear of Almodovar would have been duplicative and was outweighed by the danger of confusing the jury. *Id.*

The court did not err. The court's four questions were substantially the same as Speller's proposed questions, and the court was properly within its discretion to limit the questioning of the witness.

Finally, Speller argues that the court erred in precluding the testimony of Ronald Luis about threats made by Almodovar towards Speller. At trial, Speller's counsel sought to present Luis as a witness. N.T. at 311. He stated that Luis would testify that "he had a conversation with [Almodovar] around th[e] time before his death, and my understanding was he wanted Raymond Speller dead." *Id.* at 312. The court precluded this testimony because it was "textbook hearsay" and was not relevant because self-defense was not at issue. *Id.* Speller alleges that Luis should have been permitted to testify because the testimony was relevant to Speller's state of mind at the time of the incident. Speller's Br. at 15.

We discern no abuse of discretion. Again, self-defense and imperfect self-defense were not properly in issue. Any testimony by Luis regarding Speller's alleged fear of Almodovar would have been of limited relevance and needlessly cumulative.

- 12 -

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/4/2023