J-S41003-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RAYMOND ARMSTRONG | : | |
| | : | |
| Appellant | : | No. 3465 EDA 2017 |

Appeal from the PCRA Order October 12, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008303-2009

BEFORE: GANTMAN, P.J., OLSON, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.: **FILED JULY 30, 2018**

Appellant Raymond Armstrong appeals from the Order entered in the Court of Common Pleas of Philadelphia County on October 12, 2017, dismissing his first petition filed under the Post Conviction Relief Act ("PCRA").[1] We affirm.

This Court offered the following summary of the case history in deciding Appellant's direct appeal:

> These charges arose out of a September 27, 2008, incident in which police responded to a radio call for a person with a weapon at 2629 Wilder Street in the city and county of Philadelphia. Upon arrival, the police found [A]ppellant lying naked in the street and upon inspection of the home found the decedent, later identified as Anthony Williams (Williams), a thirty-seven (37) year-old black male lying on the living room floor unresponsive. Williams was pronounced dead by paramedics at

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

---

* Former Justice specially assigned to the Superior Court.

the scene at 10:55 p.m.  An autopsy later revealed that the decedent's cause of death was asphyxia due to strangulation and manner of death was homicide.

Trial Court Opinion, 11/15/12, at 2.

***Commonwealth v. Armstrong***, No. 1851 EDA 2012, unpublished memorandum at 1-2 (Pa.Super. filed Sept. 3, 2013), *appeal denied*, 624 Pa. 685, 87 A.3d 317 (2014), *cert. denied*, ***Armstrong v. Pennsylvania***, 135 S.Ct. 275, 190 L.Ed. 2d, 202, 83 USLW 3192 (Oct. 6. 2014).

Appellant filed the instant PCRA petition on August 21, 2015, and thereafter filed his Amended PCRA Petition on April 3, 2016. The Commonwealth filed its Motion to Dismiss on November 28, 2016, and on February 21, 2017, and June 12, 2017, the PCRA court held evidentiary hearings.  On July 14 and 20, 2017, Appellant and the Commonwealth filed post-hearing briefs, respectively, following which the PCRA court held an additional evidentiary hearing on August 29, 2017.  The PCRA court ultimately dismissed Appellant's PCRA petition on October 12, 2017, at which time it also filed its Order and Opinion.

Appellant filed a timely notice of appeal with this Court on October 20, 2017.  The trial court did not order Appellant to file a statement of the matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant did not file a concise statement. In his "Petitioner-Appellant's Opening Brief," (hereinafter "Appellant's Brief"), Appellant presents the following issues for this Court's consideration:

I.   The PCRA court erred by denying [Appellant's] ***Brady***[2] claim because the record evidence establishes: (1) [Appellant], while at Homicide, gave two exculpatory statements to Detectives Harkins and Morton, where he explained how Anthony Williams attempted to sexually assault him and this is what precipitated the events that ultimately led to Williams's death; (2) Homicide suppressed these exculpatory statements by not disclosing them to the District Attorney's Office; and (3) the suppression of these two exculpatory statements prejudiced [Appellant], particularly in light of the prosecutor's closing arguments where he accused [Appellant] of fabricating the sexual assault narrative only after reviewing the discovery and crime scene photographs. U.S. Const. Amdts. 5, 6, 8, 14; Pa.Const.art.1, sec.8,9.

II.  The prosecutor's false argument to the jury where he told the jury [Appellant] fabricated the sexual assault narrative only after he viewed the discovery and physical evidence prejudiced [Appellant] warranting a new trial. U.S. Const. amdts. 5,6, 8, 14' Pa. Const. art.1, §§ 8,9.

III. The PCRA court erred by not granting an evidentiary hearing where [Appellant] could present several witnesses in support of his claim trial counsel was ineffective for failing to present substantial testimony and evidence that corroborated [Appellant's] testimony that Anthony Williams died as a result of [Appellant] defending himself against Williams's attempted sexual assault. U.S. Const. amdts. 5,6,8,14; Pa. Const. art.1, §§ 8,9.

[IV.] The PCRA court erred because trial counsel was ineffective for failing to request an involuntary manslaughter instruction. U.S. Const. amdts. 5,6,8,14; Pa. Const. art. 1, §§ 8,9.

[V.] The PCRA court erred because trial counsel was ineffective for not requesting a sudden provocation

---

[2] ***Brady v. Maryland,*** 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

> instruction in connection with the trial court's voluntary manslaughter instruction. U.S. Const. amdts. 5,6,8,14; Pa. Const. art.1, §§ 8,9.
>
> [VI.] The cumulative errors- from the *Brady* violations, to the prosecutor's false argument, to trial counsel's ineffectiveness- rendered [Appellant's] trial fundamentally unfair. U.S. Const. amdts. 5,6,8,14; Pa. Const. art.1, §§ 8,9.

Appellant's Brief at 3-4. (boldface type and unnecessary capitalization omitted).[3]

"Our standard of review for issues arising from the denial of PCRA relief is well-settled. We must determine whether the PCRA court's ruling is supported by the record and free of legal error." **Commonwealth v. Johnson**, 179 A.3d 1153, 1156 (Pa.Super. 2018) (citation omitted).

Prior to considering Appellant's first two issues presented, we note that issues which could have been raised on direct appeal but were not are waived for the purposes of the PCRA. **See** 42 Pa.C.S.A. § 9544(b) (providing that "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction

_____

[3] Pursuant to Pa.R.A.P. 2135, "a principal brief shall not exceed 14,000 words and a reply brief shall not exceed 7,000 words." Pa.R.A.P. 2135(a)(1). Appellant's brief exceeds 14,000 words; however, he properly filed a motion requesting to exceed that word limit on March 16, 2018, and this Court granted the motion in a *Per Curiam* Order filed on April 10, 2018.

proceeding"). As we find both of these claims could have been raised previously, they are waived.

Appellant argues in his brief that his **Brady** claim[4] arises following the testimony of Detectives Brian Peters, John Harkins and Levi Morton at the

---

[4] "The crux of the **Brady** rule is that due process is offended when the prosecution withholds material evidence favorable to the accused." **Commonwealth v. Wholaver**, ___ Pa. ___, ____, 177 A.3d 136, 158 (2018) (citation omitted). "To succeed on a **Brady** claim, the defendant must show: (1) evidence was suppressed by the prosecution; (2) the evidence, whether exculpatory or impeaching, was favorable to the defendant; and (3) prejudice resulted." **Commonwealth v. Hannibal**, 638 Pa. 336, 358, 156 A.3d 197, 209 (2016). "A **Brady** violation exists only where the suppressed evidence is material to guilt or punishment, *i.e.*, where there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." **Id**.

> **Brady** does not require the disclosure of information that is not exculpatory but might merely form the groundwork for possible arguments or defenses, nor does **Brady** require the prosecution to disclose every fruitless lead considered during a criminal investigation. The duty to disclose is limited to information in the possession of the government bringing the prosecution, and the duty **does** extend to exculpatory evidence in the files of police agencies of the government bringing the prosecution. **Brady** is not violated when the appellant knew or, with reasonable diligence, could have uncovered the evidence in question, or when the evidence was available to the defense from other sources.

> **Brady** sets forth a limited duty, not a general rule of discovery for criminal cases.

**Commonwealth v. Roney**, 622 Pa. 1, 23, 79 A.3d 595, 608 (2013), *cert. denied*, 135 S.Ct. 56, 190 L.Ed.2d 56, 83 USLW 3185 (2014) (internal citations and quotation marks omitted) (emphasis in original).

PCRA hearing held on July 12, 2017, at which time they indicated Appellant had made certain statements concerning the circumstances of Mr. Williams' death which neither reduced to writing. *See* Appellant's Brief at 52-59.

Appellant surely was aware prior to trial that he had spoken with police on the night of the murder because he detailed for the PCRA court at the initial evidentiary hearing his conversations with Detectives Harkins and Morton. N.T. Hearing, 6/12/17, at 8-49. He indicated that Detective Harkins was "writing things down on the desk" before he placed his pen down and "just started listening" to Appellant. *Id*. at 14. He recalled reiterating his account of the events leading to Mr. Williams' death to Detective Morton and another police officer who stood and listened. *Id*. at 16-20. Appellant also stated that he recollected his conversations with Detectives Morton and Harkins and that he had informed trial counsel both prior to and during the trial in 2012 that he had provided these detectives with a statement. *Id.* at 49-50.

Furthermore, counsel for Appellant argued Appellant had stated that on the night of the murder he was transported from the hospital to the Homicide Unit where he gave statements and biographical information to a detective. Counsel characterized Appellant's explanation of what happened next as follows:

> They transported him to Homicide and he gave statements to a detective. Harkins took it. They take biographical information and while Detective Harkins took that biographical information, he told Detective Harkins, Look, I did this. I defended myself because Mr. Williams was sexually assaulting me.

They did a formal interview with Detective Morton, and according to [Appellant], he, again, gave another statement consistent with what he told Detective Harkins.

None of those statements—there's no Miranda[5] waiver statement or sheet in the discovery. And there is no statements from [Appellant] anywhere.

N.T. Hearing, 2/21/17, at 22.

In light of the foregoing, Appellant could have made a motion prior to August 21, 2015, the date on which he filed the instant PCRA petition, either pre-trial, mid-trial or post trial for a **Brady** hearing to determine whether or not there had been any notes, recordings, or other transcriptions of Appellant's interview with police to bolster his claim that he had revealed he was defending himself because Mr. Williams was sexually assaulting him. **See Commonwealth v. Ovalles**, 144 A.3d 957, 965–66 (Pa.Super. 2016). Thus, Appellant could have alleged that the Detectives withheld any resultant notes/statement and/or failed to disclose the same to the District Attorney's Office prior to the time he filed the instant PCRA petition. Therefore, we find this issue waived. 42 Pa.C.S.A. § 9544(b).[6]

_____

[5] **Miranda v. Arizona**, 384 U.S. 436 (1966).

[6] Even were we to find Appellant's **Brady** claim was not viable until the Detectives testified in June of 2017, we agree with the PCRA court that Appellant cannot demonstrate he was prejudiced. Appellant had provided Detectives Harkins and Morton with inconsistent, undocumented versions of the cause of Mr. Williams' death. As the court found, if such contradictory statements were introduced at trial, "the inconsistency surely would have been used against [Appellant]." In addition, the PCRA court stressed Appellant cannot establish the prejudice prong of the **Brady** test, for "[b]ased on the amount of time it takes to strangle someone to death-two to five

It follows that Appellant could have challenged the prosecutor's alleged "false argument" to the jury during closing argument on direct appeal at which time he, in fact, challenged the prosecutor's closing argument on other grounds. **See Armstrong**, **supra**, No. 1851 EDA 2012, at 8-11; therefore, this issue is waived as well.[7] Based on the foregoing, Appellant is not entitled to relief on either of these initial two claims.

_____

minutes- even if [Appellant's] police statements had been disclosed and admitted into evidence, it would have been exceedingly unlikely that the result of the proceeding would have been different. . . . if [Appellant] had initially acted in self-defense, his excessive force negated any self-defense claim." Trial Court Order and Opinion, filed 10/12/17, at 9-11.

Furthermore, Appellant claims that because he "**immediately** told detectives Williams attempted to sexually assault him and that this was what precipitated the altercation that ultimately led to William's death, there is a reasonable probability this evidence would have altered at least one juror's view of the Commonwealth's first-degree murder narrative." Appellant's Brief at 68 (emphasis added). However, the testimony of Detective Brian Peters at the June 12, 2017, PCRA hearing revealed Appellant initially identified himself as "Adam" and informed police the murder was "a cleansing for the revival, and that it had to be done," N.T. Hearing 6/12/17, at 53-55. In addition, Detective Harkins stated Appellant both indicated he thought Mr. Williams had broken his neck as a result of a fall down the steps and that he had choked Mr. Williams until he stopped struggling.

In addition, Detective Harkins did not take a formal written statement from Appellant because of his agitated mental state, and he had no further involvement in the trial process. **Id**. at 68-71. Detective Levi Morton testified that he had no pen or notepad when he spoke to Appellant, and ultimately decided not to obtain a written statement from Appellant due to the inconsistencies in his account. **Id**. at 107, 128-29. Thus, Appellant further has failed to prove that the Commonwealth suppressed the alleged material evidence.

[7] Assistant District Attorney Mark Levenberg testified at the August 29, 2017, that he could not recall specifically speaking with any detective regarding Appellant's statements to them and his review of the discovery did not reveal

We now consider Appellant's three claims pertaining to the ineffective assistance of trial counsel. In doing so, we bear in mind that counsel is presumed to be effective. ***Commonwealth v. Washington***, 592 Pa. 698, 712, 927 A.2d 586, 594 (2007). To overcome this presumption and establish the ineffective assistance of counsel, a PCRA [petitioner] must prove, by a preponderance of the evidence: "(1) the underlying legal issue has arguable merit; (2) that counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the [appellant] from counsel's act or omission." ***Commonwealth v. Johnson***, 600 Pa. 329, 346, 966 A.2d 523, 533 (2009) (citations omitted). "[A petitioner] establishes prejudice when he demonstrates that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Id***. A claim will be denied if the petitioner fails to meet any one of these requirements. ***Commonwealth v. Springer***, 961 A.2d 1262, 1267 (Pa. Super. 2008).

---

any report indicating Appellant had provided detectives at Homicide with a statement. ***See*** N.T. Hearing, 8/29/17, at 18-25, 29-31. Notwithstanding, Attorney Levenberg's closing argument would have been appropriate even if he were aware of the testimony Detectives Harkins and Morton had provided at the June 12, 2017, hearing, for his reference to Appellant's contradictory testimony during his closing argument at trial was supported by the record. Appellant testified both that he never struck Mr. Williams in the face and that he hit him in the left side of his face when Mr. Williams was biting Appellant's hand. N.T. Trial, 6/21/12, at 154, 158-59. Moreover, as we stated on direct appeal, the trial court instructed the jury that statements made by counsel do not constitute evidence. ***Armstrong***, ***supra*** at 9-10.

Appellant maintains trial counsel had been ineffective for failing to present the testimony of numerous defense witnesses- Tayo Afolabi, Michele Canales, Hayley Sydor, Eric Tolbert, Linda Armstrong (Appellant's mother), Drs. Michals and Manion, and Harold Robinson. Appellant argued before the PCRA court that had each of the proposed witnesses testified at trial, he or she would have corroborated Appellant's claims he acted in self-defense as a result of a sexual assault on the night of the murder. N.T. Hearing, 2/21/17, at 7-8. Appellant agreed with the PCRA court's characterization of the proposed testimony as "they're basically all repeats or a variation on the same thing; that the decedent was obsessed with [Appellant]." *Id*. at 10.

In his appellate brief, Appellant avers the opinion testimony of lay witnesses "would have been 'helpful to a clear understanding' of why Williams attacked [Appellant]." Appellant further reasons that "[s]imply saying Williams attempted to sexually assault him is a start, but to ensure [Appellant] raised reasonable doubt regarding the murder charge, trial counsel needed to present this type of evidence to corroborate [Appellant's] testimony that Williams was sexually attracted to and obsessed with him." Appellant's Brief at 75. Appellant asserts such testimony was admissible to support his self-defense theory at trial under Pa.R.Evid. 404(a)(2)(B) and 405(b)(2)[8] as

_____

[8] Rule 404 entitled "Character Evidence; Crimes or Other Acts" reads in pertinent part as follows:

_____

**(a) Character Evidence.**

*(1) Prohibited Uses.* Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.

*(2) Exceptions for a Defendant or Victim in a Criminal Case.* The following exceptions apply in a criminal case:

(A) a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it;
(B) subject to limitations imposed by statute a defendant may offer evidence of an alleged victim's pertinent trait, and if the evidence is admitted the prosecutor may:
(i) offer evidence to rebut it; and
(ii) offer evidence of the defendant's same trait; and

(C) in a homicide case, the prosecutor may offer evidence of the alleged victim's trait of peacefulness to rebut evidence that the victim was the first aggressor.

Pa.R.E. 404.    Pa.R.E. 405(b)(2) entitled "Methods of Proving Character"

states:

**(b) By Specific Instances of Conduct.** Specific instances of conduct are not admissible to prove character or a trait of character, except:
                        ***
(2) In a criminal case, when character or a character trait of an alleged victim is admissible under Pa.R.E. 404(a)(2)(B) the defendant may prove the character or character trait by specific instances of conduct.

Pa.R.E. 405.

evidence of a personal character trait of the alleged victim, and "not only admissible, but extremely probative to the issue of whether Williams attempted to sexually assault [Appellant.]"   Appellant's Brief at 76, 85.

"Counsel has a general duty to undertake reasonable investigations or make reasonable decisions that render particular investigations unnecessary." *Johnson*, at 350, 966 A.2d at 535. "The duty to investigate, of course, may include a duty to interview certain potential witnesses; and a prejudicial failure to fulfill this duty, unless pursuant to a reasonable strategic decision, may lead to a finding of ineffective assistance." *Id*. at 350, 966 A.2d 535-36.

> [W]hen raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements of the [*Strickland v. Washington*, 466 U.S. 668 (1984)] test by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial[.]
>     To demonstrate *Strickland* prejudice, a petitioner must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case. Counsel will not be found ineffective for failing to call a witness unless the petitioner can show that the witness's testimony would have been helpful to the defense.

*Commonwealth v. Matias*, 63 A.3d 807, 810-11 (Pa.Super. 2013) (citations and quotation marks omitted), *appeal denied*, 621 Pa. 671, 74 A.3d 1030 (2013).

In determining these claims lacked merit, the trial court reasoned as follows:

[Appellant] asserts that trial counsel was ineffective for failing to call as witnesses, Harold Robinson, Semaj Howard, Tayo Afolabi, Michele Canales, and Hayley Sydor. Each witness would have testified to the victim's obsession with [Appellant] and his unwanted sexual advances toward others. [Appellant] argues that this testimony would have helped establish that [Appellant] acted in self-defense at the time of the murder.

Robinson, who previously lived with the victim, would have testified that the victim made unwanted sexual advances toward him (Robinson) and a friend, Jerome, while Robinson lived at the victim's home. According to Robinson, the victim arranged for attractive men from out of town to travel to his home to have sex with. Robinson also claims that the victim, who took photographs of male models, had more photographs of [Appellant] than any other male model. Similar to Robinson, Howard would have testified that the victim "inappropriately touched him [(Howard)] repeatedly by grabbing his buttock and trying to kiss him." Howard would have further testified that he witnessed the victim become angry when [Appellant] was with women.

Afolabi would have testified that the victim led men to believe that he had a modeling company to bait them to have sex with him. He would have also testified that the victim was fascinated with [Appellant][.] Similarly, Canales and Sydor would have testified that young men frequently stayed with the victim and that the victim was sexually obsessed with [Appellant].

To obtain relief based on ineffective assistance of counsel, a petitioner must show that such ineffectiveness "in the circumstances of the particular case, so undermined the truth - determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v Jones*, 912 A.2d 268, 278 (Pa. 2006); 42 Pa.C.S. § 9543(a)(2)(ii). Counsel is strongly presumed to have rendered effective assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland v. Washington*, 466 U.S. 668 (1984); *Commonwealth v Weiss*, 81 A.3d 767, 783 (Pa. 2013).

To overcome this strong presumption, the Petitioner has to satisfy the performance and prejudice test set forth in *Strickland v Washington*, 466 U.S. 668 (1984); *see also Commonwealth v Pierce*, 527 A.2d 973, 975 (Pa. 1987). The *Strickland/Peirce* test applies by looking to three elements-whether: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) the petitioner has

shown that he suffered prejudice as a result of counsel's lapse, i.e., that there is a reasonable probability that the result of the proceeding would have been different. *Commonwealth v Bennett*, 57 A.3d 1185, 1195-96 (Pa. 2012) (*citing Pierce*, 527 A.2d at 975). Failure to satisfy any prong of this test for ineffectiveness will require rejection of the claim. *Commonwealth v. Daniels*, 104 A.3d 267 (Pa. 2014). If a claim fails under any necessary element of the *Strickland/Pierce* test, the court may proceed to that element first. *Bennett*, 57 A.3d at 1196. A "claim has arguable merit where the factual averments, if accurate, could establish cause for relief." *Commonwealth v Pander*, 100 A.3d 626, 631 (Pa. Super. 2013).

In addition to meeting the *Strickland/Peirce* requirements for ineffectiveness, to establish that counsel was ineffective for failing to call a witness, the Petitioner must demonstrate that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the witness's testimony was so prejudicial as to deny him a fair trial. *Commonwealth v Washington*, 927 A.2d 586, 599 (Pa. 2007) (citing *Commonwealth v. Fletcher*, 561 Pa. 266, 750 A.2d 261, 275 (Pa. 2000)).

Because none of the proffered testimony of Robinson, Howard, Afolabi, Canales, and Sydor is relevant to prove self-defense, these claims are devoid of merit. Further, claims that the victim made unwanted sexual advances toward [Appellant] are inadmissible. As the Commonwealth correctly asserts, a defendant is permitted to introduce specific acts of violence by the victim only "if an accused has knowledge of the victim's prior violent conduct"; or if the victim had a prior conviction that showed his aggressive propensities. *Commonwealth v McClain*, 587 A 2d 798, 802-03 (Pa.Super. 1991) (emphasis original).

[Appellant's] claims fail under both prongs. For the first prong, [Appellant] never stated during his trial testimony that he was aware that the victim attacked anyone prior to the instant murder. Further, nothing indicates that [Appellant] was afraid of the victim. [Appellant] testified that he stayed over the victim's house roughly two hundred times before the murder. He also testified that he *never* had a problem with the victim, that the victim *never* injured, hurt, or attacked him before, and that the

victim was a *good friend*. N.T., 6/21/2012 at 141.[9] The second *McClain* prong is inapplicable as [Appellant] fails to assert that the victim was convicted for any of the alleged unwanted sexual advances claimed by the aforesaid witnesses. Because the alleged testimony from these five witnesses is irrelevant and would be inadmissible at trial, counsel cannot be deem[ed] ineffective for failing to call them[.]

[Appellant] next claims that counsel was ineffective for failing to call his mother, Linda Armstrong, to testify at trial. The [Appellant's] mother would have testified that she was on the phone with [Appellant] right before the murder and heard the victim say to [Appellant], "you're mine now, oh yeah, you're mine now." Presumably, this testimony would have helped establish that [Appellant] acted in self-defense.

This claim is without merit as [Appellant] cannot demonstrate prejudice. Even if, *arguendo*, Linda Armstrong's testimony were admissible to show that [Appellant] acted in self-defense, [Appellant] cannot escape the fact that he strangled the victim to death. The medical examiner testified that after thirty seconds, a person being strangled loses consciousness; to cause death, the strangulation must last *two to five minutes*. N.T., 6/20/2012 at 96-97. If [Appellant] had initially acted in self-defense, his use of excessive force-strangling the victim past the point of unconsciousness-negated any self-defense claim and demonstrated his specific intent to kill. *See Commonwealth v Harris*, 703 A.2d 441 (Pa. 1997) (when the defendant's first shot disabled the victim, the next five shots to the victim were excessive force); *see Commonwealth v Tilley*, 595 A.2d 575 (Pa. 1991) (after the first two shots paralyzed the victim, the third shot to his face was excessive force). As such, no relief is due.

[Appellant] also claims that counsel failed to call Eric Tolbert as a witness. Tolbert would have testified that [Appellant] had planned to move out of the victim's home before the murder. [Appellant] would have offered this testimony to counter a Commonwealth theory that a possible motive for the murder was that the victim had planned to evict [Appellant][.] Tolbert's testimony, however, would be inadmissible hearsay. Furthermore, [Appellant] testified at trial, and never mentioned

---

[9] Indeed, Appellant stressed that in all the time he had known Mr. Williams, who was raising a young teenager, "nothing like this had ever happened," and he agreed he had "never had any problems at all with him: or ever knew him to act in a similar way." N.T. Trial, 6/21/12 at 172-73.

any plans to move out. For these reasons, this issue warrants no relief.

[Appellant] claims that trial counsel was ineffective for not calling Dr. Michals and Dr. Manion, both psychiatrists, as witnesses.[3] [Appellant] avers that the psychiatrists would have testified to his state of mind at the time of the murder, in that, after an alleged sexual assault by the victim, [Appellant] either acted in a heat of passion (sufficient to reduce the murder to voluntary manslaughter), in self-defense, or did not have the requisite *mens rea*.

This claim is meritless. As the Commonwealth correctly points out, there is no scientific component to these reports-the reports are merely based on what [Appellant] told the psychiatrists. Moreover, [Appellant] never asserted at trial that he had acted under a heat of passion; instead, he claimed that he accidently strangled the victim. N.T., 6/21/2012 132-33. Lastly, these reports would not rebut [Appellant's] use of excessive force in strangling the victim to death. *See Harris* and *Tilley*, *supra*[.]

_____
[3] Dr. Manion interviewed [Appellant] on June 1, 2012[;] the date of Dr. Michaels' interview is unknown.

Order and Opinion, filed October 12, 2017, at 4-8 (emphasis in original). Upon our review, we have no need to expand upon the PCRA court's analysis in finding this claim lacks merit, and we rely upon it in disposing of Appellant's third issue.

Appellant next posits trial counsel was ineffective for failing to request both an involuntary manslaughter jury instruction and a sudden provocation instruction. However, a review of the record reveals trial counsel did request an involuntary manslaughter instruction, and the trial court refused that request:

Defense Counsel: I would ask for voluntary manslaughter as to justification, mistaken self-defense. I would ask for self-defense and I think what goes with that is the voluntary part of

manslaughter which is imperfect self-defense or mistaken self-defense. And I would also ask, Your Honor, for involuntary manslaughter. And I have the jury instruction with me. There's also some case law on point that talks about a fight and somebody dying as a result of the fight.

N.T. Trial, 6/21/12, at 186; N.T. Hearing, 2/21/17, at 18.

Although counsel did not ask the trial court to provide the jury with a specific voluntary manslaughter (sudden and intense passion) instruction, the trial court stated on the record it had contemplated so instructing the jury, but found no support for it in the trial evidence. N.T. Trial, 6/22/12, at 5. The PCRA court reiterated that "[e]ven if counsel had made the request, it would have been denied." N.T. Hearing, 2/21/17, at 19. Thus, Appellant has failed to establish trial counsel's ineffectiveness on these grounds.

Finally, Appellant contends the cumulative effect of the aforementioned alleged errors rendered his trial "fundamentally unfair." Appellant's Brief at 95. The Pennsylvania Supreme Court has determined that:

> no number of claims which fail on their merits may collectively warrant relief. **Commonwealth v. Spotz**, 610 Pa. 17, 18 A.3d 244, 320–21 (2011). However, "[w]hen the failure of individual claims is grounded in lack of prejudice, then the cumulative prejudice from those individual claims may properly be assessed." **Id**. at 321.

**Commonwealth v. Wholaver**, ___ Pa. ____, 177 A.3d 136, 180 (2018).

As we determined above, none of Appellant's issues entitle him to relief. We have disposed of Appellant's issues in a number of ways, including waiver, lack of merit and Appellant's failure to carry his burden of persuasion on appeal. To the extent that we have rejected some of Appellant's issues based

upon a prejudice analysis, we also find that collective prejudice is lacking and, thus, deny relief on this last issue. ***Id***.

Order Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/30/18