J-A15010-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                :            PENNSYLVANIA
                                                  :

                  v.                     :
                                                  :

MARKUS WILLIAMS                  :
                                                  :

              Appellant          :     No. 1652 MDA 2017

Appeal from the Judgment of Sentence August 8, 2017
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s):  CP-22-CR-0005252-2016

BEFORE:  PANELLA, J., MURRAY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY PANELLA, J.:         **FILED: JANUARY 11, 2019**

Appellant, Markus Williams, appeals from the aggregate judgment of sentence of fifteen to thirty years of confinement, which was imposed after his jury trial conviction for voluntary manslaughter based upon an unreasonable belief, possession of firearm prohibited, and firearms not to be carried without license.[1] We affirm.

In its opinion, the trial court fully and correctly set forth the relevant facts and procedural history of this case. **See** Trial Court Opinion, filed Dec. 19, 2017, at 1-6. Therefore, we have no reason to restate them at length here. For the convenience of the reader, we briefly note that, during the night of July 29 into July 30, 2016, Appellant shot and killed Bryan Taylor, who had

_____

[1] 18 Pa.C.S. §§ 2503(b), 6105(a)(1), and 6106(a)(1), respectively.

been standing next to Zachary "Sean" Harr, with whom Appellant had been arguing.

During trial, Harr testified that, prior to the shooting, Appellant had been acting in an aggressive manner towards him and then said, "Cause I'm about that gun play." N.T. Trial at 187. The witness continued that he, Harr, did not reach for nor display his own firearm during this entire conversation with Appellant. *See id*., at 189-190. He also testified that he did not see Taylor push Appellant, display a firearm, nor make any motions or gestures suggesting he had a firearm. *See id*., at 188, 190. Harr acknowledged that he gave a statement to police the day after the shooting. *See id*., at 191. He further testified that he did not see a firearm removed from Taylor's body. *See id*., at 200.

Another eyewitness, Jonathan Porter, who had been drinking with Harr and Taylor at a few local bars earlier in the evening, testified that he did not see Harr or Taylor display a weapon or reach into their pockets or waistbands prior to the shooting. *See id*., at 120, 136. Porter further testified that, after the shooting, he saw a firearm protruding from Taylor's waistband. *See id*., at 139.

During Porter's cross-examination, defense counsel showed him a photograph of Porter and Taylor, admitted as Defendant's Exhibit 1, which Porter confirmed had been taken at a bar shortly before the shooting. *See id*., at 148, 150-151. Defense counsel asked Porter three times if Taylor was

holding a firearm in the photograph, which Porter denied each time. *See id*., at 148-150. The photograph was passed to each member of the jury. *See id*., at 151.

Prior to the close of the Commonwealth's case-in-chief, the parties stipulated that Appellant "is a person not to possess a firearm in the Commonwealth" and "was not licensed to carry and conceal a firearm in the Commonwealth." *Id*., at 209.

Appellant testified that, immediately prior to the shooting, Harr was acting aggressively towards him, smacking him on the chest, and asking him if he had a problem with a man nicknamed "Poor-Poor." *Id*., at 221. Appellant continued that he was leaving when Harr reached behind his back, where the butt of a firearm was protruding from his pants. *See id*., at 222, 229. Appellant testified that another man, unknown to him at the time, but later identified as Taylor, approached him, grabbed him by the throat, and shoved him against a wall. *See id*., at 230. Appellant stated that, after Harr pulled out his firearm, Appellant discharged his own weapon and fled in fear for his life. *See id*., at 230-232. Appellant admitted that he did not report the incident to police. *See id*., at 254.

In rebuttal, the Commonwealth presented the testimony of Detective Joseph A. Zimmerman, who stated that, during interrogation, Appellant initially denied any involvement in the shooting. *See id*., at 276. Detective

Zimmerman added that Appellant later changed his story and claimed self-defense. ***See id***., at 282.

On March 26, 2017, a jury convicted Appellant of the aforementioned crimes. Appellant later filed a post-sentence motion challenging the weight of the evidence as to his voluntary manslaughter conviction but not requesting a new trial, which the trial court denied. On October 23, 2017, Appellant filed this timely[2] direct appeal.

Appellant presents the following issues for our review:

[1.] The verdict of guilty as to Voluntary Manslaughter was based upon insufficient evidence where there was contradicted evidence that Appellant was backed against a wall while being assaulted by two other men - one who was known to the Appellant to be armed at the time of the attack.

[2.] The verdict of guilty as to Voluntary Manslaughter was against the weight of the evidence where the Commonwealth's witness Sean Harr, admitted disarming the victim after Appellant fired upon the deceased; moreover a trial photo showed the victim brandishing a gun prior to the shooting and being in a highly intoxicated condition, it belies reason to believe that the Appellant was not justified in using deadly force while being attacked while up against a wall by multiple men.

Appellant's Brief at 7 (issues re-ordered to facilitate disposition; suggested answers omitted).

_____

[2] Thirty days after September 21, 2017, was Saturday, October 21, 2017; the next business day thereafter was October 23, 2017. ***See*** Pa.R.A.P. 903(a); 1 Pa.C.S.A. § 1908.

Appellant's first[3] claim is that the evidence is insufficient to support his conviction "beyond a reasonable doubt" for voluntary manslaughter based upon an unreasonable belief, Appellant's Brief at 13-18,[4] pursuant to § 2503(b) of the Crimes Code:

> A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification),[5] *but his belief is unreasonable*.

---

[3] In the "Argument" section of his brief to this Court, Appellant actually combines his weight and sufficiency claims under one header, with no subdivisions. **See** Appellant's Brief at 13-18. Failure to isolate each argument is in direct violation of Pa.R.A.P. 2119(a):

> The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part— in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

Appellant's failure to distinguish between weight and sufficiency arguments can result in waiver. **See Commonwealth v. Widmer**, 744 A.2d 745, 751-752 (Pa. 2000); **Commonwealth v. Birdseye**, 637 A.2d 1036, 1039-1040 (Pa. Super. 1994) ("Because [appellants] failed to distinguish between their sufficiency and weight of the evidence claims and presented no argument regarding the weight of the evidence, we deem their weight of the evidence issue waived."). However, as we can discern which portions of Appellant's argument apply to his sufficiency claim and which apply to his weight claim, we will not deem his issues waived for this reason.

[4] Appellant does not challenge his firearms convictions. As noted, at trial, the parties had stipulated that Appellant "is a person not to possess a firearm in the Commonwealth" and "was not licensed to carry and conceal a firearm in the Commonwealth." N.T. Trial at 209.

[5] "The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting

18 Pa.C.S.A. § 2503(b) (emphasis added). Section 2503(b) is referred to as "unreasonable belief voluntary manslaughter" or "sometimes loosely referred to as 'imperfect self-defense.'" *Commonwealth v. Tilley*, 595 A.2d 575, 582 (Pa. 1991); *see also Commonwealth v. Sanchez*, 82 A.3d 943, 980 (Pa. 2013).

Appellant contends that his belief was reasonable that circumstances existed justifying his killing of Taylor, because it was "reasonable for [him] to believe that he was in imminent danger of death or serious bodily injury under the circumstances." Appellant's Brief at 17. If Appellant's belief was reasonable, then he should have been found not guilty of voluntary manslaughter. *See Tilley*, 595 A.2d at 582 ("[I]mperfect self-defense . . . is imperfect in only one respect—an unreasonable rather than a reasonable belief that deadly force was required to save the actor's life").

"If the defendant properly raises self-defense . . . , the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant's act was not justifiable self-defense." *Commonwealth v. Smith*, 97 A.3d 782, 787 (Pa. Super. 2014) (citation and internal quotation marks omitted).

> In reviewing the sufficiency of the evidence, our standard of review is as follows:
>
> Whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond

---

himself against the use of unlawful force by such other person on the present occasion." 18 Pa.C.S.A. § 505(a).

a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. . . . Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Fortson***, 165 A.3d 10, 14–15 (Pa. Super.) (citation and internal brackets omitted) (some formatting), *appeal denied*, 174 A.3d 558 (Pa. 2017).

Viewing all the evidence admitted at trial in the light most favorable to the Commonwealth as verdict winner, we agree with the trial court that the Commonwealth provided sufficient evidence to establish that Appellant's belief that he was in danger of death or serious bodily injury was unreasonable and his act hence was not justifiable self-defense. ***See Smith***, 97 A.3d at 787. Harr testified that Appellant was the initial aggressor and that neither Harr nor the actual victim, Taylor, had displayed their firearms to Appellant or indicated with words or actions that they were carrying firearms. ***See*** N.T. Trial at 187-90. Another eyewitness confirmed that neither Harr nor Taylor had threatened Appellant prior to the shooting. ***See id***., at 136. That witness also noted that Taylor had not pulled out his firearm, which was still in his waistband after he was shot. ***See id***., at 139. This testimony was sufficient to enable the jury, as fact-finder, to find beyond a reasonable doubt that Appellant's belief that he was in danger of death from or unlawful force by Harr and/or Taylor was unreasonable and, thus, sufficient to convict him of voluntary manslaughter

based upon an unreasonable belief. **See Fortson**, 165 A.3d at 14; 18 Pa.C.S.A. § 2503(b).

Appellant next contends that his conviction was against the weight of the evidence. **See** Appellant's Brief at 13. According to Appellant, "there was . . . evidence that [he] was backed against a wall while being assaulted by two other men - one who was known to the Appellant to be armed at the time of the attack." **Id**. He concludes that

> [i]t was objectively reasonable for Appellant to believe, at that moment, that he was in imminent danger of death or serious bodily injury. This is especially true given that Commonwealth's witness Sean Harr, admitted disarming the victim after Appellant fired a single shot upon the deceased, N.T. [Trial] at 139, and a trial photo showed the victim brandishing a gun prior to the shooting and being in a highly intoxicated condition.

**Id**., at 17-18.

As a preliminary matter, a challenge to the weight of the evidence must be preserved by a motion for a new trial. **See** Pa.R.Crim.P. 607(A). The Rule provides:

> A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:
>
>> (1) orally, on the record, at any time before sentencing;
>>
>> (2) by written motion at any time before sentencing; or
>>
>> (3) in a post-sentence motion.

**Id**. "Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion." **Commonwealth v. Thompson**, 93 A.3d 478, 490 (Pa. Super. 2014) (citation omitted).

- 8 -

Here, although Appellant challenged the weight of the evidence before the trial court in a written motion, that motion did not request a new trial. **See** Pa.R.Crim.P. 607(A). Hence, Appellant's challenge to the weight of the evidence is waived. **See id.**; **Thompson**, 93 A.3d at 490.

Assuming solely for the sake of argument that Appellant's challenge to the weight of the evidence was properly preserved, our standard of review for a challenge to the weight of the evidence is as follows:

> The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses.
>
> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence.

**Commonwealth v. Talbert**, 129 A.3d 536, 545–46 (Pa. Super. 2015) (internal brackets, citations, and quotation marks omitted; some additional formatting).

Although Appellant testified that Harr and Taylor were the aggressors and that he had feared for his life, his testimony was contradicted by two other witnesses, who testified that Appellant was the aggressor and that neither Harr nor Taylor displayed a weapon, moved as if to retrieve a weapon, or otherwise threatened Appellant. **Compare** N.T. Trial at 221-222, 229-232, **with id**., at 136, 187-190.

As for Appellant's assertions in his brief that the "Commonwealth's witness Sean Harr, admitted disarming the victim after Appellant fired a single shot upon the deceased, N.T. [Trial] at 139, and a trial photo showed the victim brandishing a gun prior to the shooting[,]" Appellant's Brief at 18, we observe that these allegations are not supported by the record. Page 139 of the notes of testimony from trial transcribes Porter's testimony, not Harr's, and we find nothing in Harr's testimony stating that he disarmed Taylor. **See** N.T. Trial at 165-211. In fact, Harr explicitly testified that he did not see a firearm removed from Taylor's corpse. **See id**., at 201. As for the photograph admitted as Defendant's Exhibit 1, Porter denied three times that Taylor was holding a firearm in the photograph; nevertheless, when the photograph was passed to each member of the jury to examine, the jurors could make their own determination as to whether Taylor was holding a firearm in the image. **See id**., at 148-150.[6]

Ultimately, the jury chose to believe Harr and Porter over Appellant, and all credibility determinations are the prerogative of the jury as fact-finder. **See Talbert**, 129 A.3d at 545–46. We cannot and will not substitute our

---

[6] However, there is no dispute that Taylor was armed on the night that he was killed, as Porter testified during direct examination that he saw a firearm tucked into Taylor's waistband after Taylor was shot. **See** N.T. Trial at 139. The fact that Taylor had a firearm on his person on the night he was killed does not establish that he threatened Appellant with the firearm or even displayed it to Appellant, and, therefore, this fact does not contradict Harr's and Porter's testimony. **See id**., at 136, 139, 187-190.

judgment for that of the jurors, as Appellant now requests we now do. Additionally, the jury may have doubted Appellant's veracity during some of his testimony, because, despite his claim that he feared for his life, he did not report the incident to police, and, when questioned, he initially lied to authorities about the shooting. **Compare** N.T. Trial at 230-32 **with id**., at 254, 276, 282. By contrast, Harr gave a statement to police the day after the shooting. **See id**., at 191.

Based upon the testimony presented by the Commonwealth, particularly that of Harr and Porter, the jury found that, while Appellant may have sincerely believed that he needed to defend himself from danger of death or great bodily harm, such belief was unreasonable given the circumstances.[7] Accordingly, had we addressed this claim on its merits, we would have found no abuse of discretion in the trial court's conclusion that the decision to convict Appellant of voluntary manslaughter based upon an unreasonable belief was not against the weight of the evidence.

---

[7] In its opinion, the trial court speculates:

> [I]n the heat of the conflict (we note that from the testimony this appeared to be a mere disagreement and does not rise to the level of a fight), Appellant failed to evaluate the danger carefully and make a decision about how much force was needed to protect himself. Appellant had every opportunity to try and avoid the confrontation and leave the scene of the shooting, thus removing himself from the situation.

Trial Court Opinion, filed Dec. 19, 2017, at 10.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/11/2019