J-S32012-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
SHELDON HANNIBAL :
:
Appellant : No. 1781 EDA 2018

Appeal from the PCRA Order Entered June 1, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006319-2013

BEFORE: SHOGAN, J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY SHOGAN, J.:                **FILED SEPTEMBER 16, 2019**

Appellant, Sheldon Hannibal, appeals from the order denying his petition

for relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.

§§ 9541–9546. We affirm.

The PCRA court summarized the procedural history[1] of this case as

follows:

On April 29, 2014, following a jury trial before this [c]ourt,
[Appellant] was convicted of one count of third-degree murder (18
Pa.C.S. § 2502(c)), one count of conspiracy to commit murder (18
Pa.C.S. §§ 903 & 2502(c)), one count of carrying a firearm without
a license (18 Pa.C.S. § 6106), one count of carrying a firearm on
a public street in Philadelphia (18 Pa.C.S. § 6108), and one count
of possessing an instrument of crime (18 Pa.C.S. § 907).
[Appellant] was jointly tried with his co-defendant, William
Quattlebaum. On July 7, 2014, the [c]ourt imposed an aggregate

_____

[1] The PCRA court set forth a detailed account of the facts in this case in its
Pa.R.A.P. 1925(a) opinion, which we decline to repeat herein. PCRA Opinion,
8/24/18, at 2-4.

sentence of 30 to 60 years incarceration in state prison. [Appellant] filed post-sentence motions, which the [c]ourt denied on October 23, 2014. [Appellant] was represented at trial, sentencing, and on appeal by Samuel Stretton, Esquire.

On November 23, 2015, the Superior Court affirmed [Appellant's] judgment of sentence, and on March [16], 2016, the Supreme Court denied *allocator*. [Appellant], through retained counsel, Lonny Fish, Esquire, then filed a petition under the [PCRA] on June 14, 2017.[1][2] On April 13, 2018, the [c]ourt issued notice pursuant to Pa.R.Crim.P. 907 ("907 Notice") of its intention to dismiss [Appellant's] petition without a hearing. On June 1, 2018, the [c]ourt dismissed [Appellant's] PCRA petition. On that same day, the [c]ourt granted the motion of defense counsel Fish to withdraw, and appointed Gary Server, Esquire, to represent [Appellant] on any appeal from the [c]ourt's dismissal order.

> [1] Defense counsel styled his pleading as a petition for habeas corpus relief and for relief under the PCRA. However, the claims in the petition seek relief only under the PCRA. For that reason, [Appellant's] petition is analyzed herein solely as a PCRA petition.

PCRA Court Opinion, 8/24/18, at 1-2. Appellant filed a timely appeal.

Appellant and the PCRA court complied with Pa.R.A.P. 1925.

On appeal, Appellant presents the following issue for our review:

The [c]ourt erred when it dismissed the Petition under the [PCRA] where trial counsel was ineffective for arguing that the Appellant was not acting in self-defense or with an unreasonable belief that he was acting in self-defense where there was evidence

---

[2] Appellant's PCRA petition was timely filed. The Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on March 16, 2016. ***Commonwealth v. Hannibal***, 663 EAL 2015, ___ A.3d ___ (Pa. filed March 16, 2016). From that time, Appellant had ninety days, or until June 14, 2016, to file an appeal with the United States Supreme Court. 28 U.S.C. § 2101(c); ***Commonwealth v. Chambers***, 35 A.3d 34, 36 (Pa. Super. 2011). Further, Appellant had one year from June 14, 2016, or until June 14, 2017, to file his PCRA petition.

supporting that the Appellant was acting in self-defense or with an unreasonable belief that he was acting in self-defense.

Appellant's Brief at 6. More specifically, Appellant argues that there is evidence of record supporting a claim of self-defense. *Id.* at 14. Accordingly, Appellant asserts that counsel's failure to argue self-defense, and instead take the position at trial that Appellant "was just present in the area," *id.* at 18, that he "never shot anyone," *id.* at 16, and that he "never even possessed a firearm on the night of the shooting," *id.* at 16, resulted in ineffective assistance of counsel. *Id.* at 13-20.

When reviewing the propriety of an order denying PCRA relief, we consider the record "in the light most favorable to the prevailing party at the PCRA level." *Commonwealth v. Stultz*, 114 A.3d 865, 872 (Pa. Super. 2015) (quoting *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*)). This Court is limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. *Commonwealth v. Robinson*, 139 A.3d 178, 185 (Pa. 2016). The PCRA court's findings will not be disturbed unless there is no support for them in the certified record. *Commonwealth v. Lippert*, 85 A.3d 1095, 1100 (Pa. Super. 2014).

Our Supreme Court has explained the following in addressing an ineffective assistance of counsel claim:

> To prevail in a claim of ineffective assistance of counsel, a petitioner must overcome the presumption that counsel is effective by establishing all of the following three elements, as set

forth in **Commonwealth v. Pierce**, 515 Pa. 153, 527 A.2d 973, 975–76 (1987): (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice because of counsel's ineffectiveness.

**Commonwealth v. Paddy**, 15 A.3d 431, 442 (Pa. 2011).

With regard to the second, reasonable basis-prong, "we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." **Commonwealth v. Washington**, 927 A.2d 586, 594 (Pa. 2007). We will conclude that counsel's chosen strategy lacked a reasonable basis only if Appellant proves that "an alternative not chosen offered a potential for success substantially greater than the course actually pursued." **Commonwealth v. Williams**, 899 A.2d 1060, 1064 (Pa. 2006). "In order to meet the prejudice prong of the ineffectiveness standard, a defendant must show that there is a 'reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" **Commonwealth v. Reed**, 42 A.3d 314, 319 (Pa. Super. 2012).

A claim of ineffective assistance of counsel will fail if the petitioner does not meet any of the three prongs. **Commonwealth v. Williams**, 863 A.2d 505, 513 (Pa. 2004). "The burden of proving ineffectiveness rests with Appellant." **Commonwealth v. Rega**, 933 A.2d 997, 1018 (Pa. 2007).

Upon review of the issue raised, the certified record, the credibility determinations made by the PCRA court, the briefs of the parties, and the

applicable legal authority, we conclude that the PCRA court's thorough and well-crafted opinion entered on August 24, 2018, comprehensively and correctly disposes of Appellant's issue. Accordingly, we affirm the PCRA court's order dismissing Appellant's PCRA petition, and we do so based on the PCRA court's opinion. The parties are directed to attach a copy of that opinion in the event of further proceedings in this matter.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/16/19

FILED

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION 2018 AUG 24 PM 2:44

OFFICE OF JUDICIAL RECORDS
CP-51-CR-0006319-2013
FIRST JUDICIAL DISTRICT
OF PENNSYLVANIA

COMMONWEALTH OF
PENNSYLVANIA

      v.

SHELDON HANNIBAL

CP-51-CR-0006319-2013 Comm. v Hannibal, Sheldon
Opinion

8154603431

OPINION

BRONSON, J.                                                August 24, 2018

On April 29, 2014, following a jury trial before this Court, defendant Sheldon Hannibal

was convicted of one count of third-degree murder (18 Pa.C.S. § 2502(c)), one count of

conspiracy to commit murder (18 Pa.C.S. §§ 903 & 2502(c)), one count of carrying a firearm

without a license (18 Pa.C.S. § 6106), one count of carrying a firearm on a public street in

Philadelphia (18 Pa.C.S. § 6108), and one count of possessing an instrument of crime (18 Pa.C.S.

§ 907). Defendant was jointly tried with his co-defendant, William Quattlebaum. On July 7,

2014, the Court imposed an aggregate sentence of 30 to 60 years incarceration in state prison.

Defendant filed post-sentence motions, which the Court denied on October 23, 2014. Defendant

was represented at trial, sentencing, and on appeal by Samuel Stretton, Esquire.

On November 23, 2015, the Superior Court affirmed defendant's judgment of sentence,

and on March 3, 2016, the Supreme Court denied *allocator*. Defendant, through retained

counsel, Lonny Fish, Esquire, then filed a petition under the Post Conviction Relief Act

("PCRA") on June 14, 2017.[1] On April 13, 2018, the Court issued notice pursuant to

---

[1] Defense counsel styled his pleading as a petition for habeas corpus relief and for relief under the PCRA. However, the claims in the petition seek relief only under the PCRA. For that reason, defendant's petition is analyzed herein solely as a PCRA petition.

1

Pa.R.Crim.P. 907 ("907 Notice") of its intention to dismiss defendant's petition without a hearing. On June 1, 2018, the Court dismissed defendant's PCRA petition. On that same day, the Court granted the motion of defense counsel Fish to withdraw, and appointed Gary Server, Esquire, to represent defendant on any appeal from the Court's dismissal order.

Defendant has now appealed the Court's dismissal of his PCRA petition, alleging that trial counsel was ineffective for failing to argue that defendant acted in self-defense, or with an unreasonable belief that he was acting in self-defense. *See* Defendant's 1925(B) Statement ("Statement of Errors"). Defendant also claims that counsel was ineffective for failing to raise this issue in post-sentence motions or on appeal. *Id.* For the reasons set forth below, defendant's claims are without merit, and the Court's order dismissing his PCRA petition should be affirmed.

## I. FACTUAL BACKGROUND

The factual background of this matter is set forth in the Court's Rule 1925(a) opinion filed in defendant's direct appeal as follows:

> At trial, the Commonwealth presented the testimony of Philadelphia Police Detectives James Burns and Francis Graf, Philadelphia Police Officers Thomas Dempsey, Anthony Ferriola, Terrance Lewis, and Ronald Weitman, Deputy Chief Medical Examiner Dr. Gary Collings, Sharon Frazier, Ya-Ron Frazier, Ashlaterra Frazier, Shante Quattlebaum, Hector Alicea, and Mohamad Doumbia. Defendant presented the testimony of Michele Wall, Darren Ward, and Saundra Hannibal. Co-defendant Quattlebaum did not present any evidence. Viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence established the following.
>
> In the evening of February 1, 2013, Ya-Ron Frazier was with William Quattlebaum, running various errands until the very early morning hours of February 2, 2013. N.T. 4/23/14 at 101-103.[2] Eventually, Ya-Ron and Quattlebaum parked outside Ya-Ron's sister's home on the 5900 block of North 20th Street in Philadelphia. N.T. 4/23/14 at 105. Quattlebaum had a firearm on his hip when he and Ya-Ron were together that day. N.T. 4/23/14 at 153. Meanwhile, Ya-Ron's sister, Sharon Frazier, was at home while a third sister,

---

[2] Ya-Ron was also known as "Mooda." N.T. 4/22/14 at 153.

2

Ashlaterra Frazier, was visiting.[3] N.T. 4/22/14 at 151; 4/24/14 at 109. Ya-Ron and Quattlebaum were talking while sitting in Quattlebaum's car outside Sharon's home. N.T. 4/22/14 at 155-56; 4/23/14 at 100. While talking with Quattlebaum, Ya-Ron received a phone call from Mark Bowie, which instigated an argument between Ya-Ron and Quattlebaum about whether or not Ya-Ron was dating Bowie.[4] N.T. 4/23/14 at 104. While Ya-Ron and Quattlebaum were arguing, Bowie and John Maxwell walked up the street to Sharon's home and entered.[5] N.T. 4/22/14 at 154; 4/23/14 at 105; 4/24/14 at 110-111. A few minutes after Bowie and Maxwell entered the home, Ya-Ron also entered, with Quattlebaum following shortly thereafter in order to continue his argument with Ya-Ron. N.T. 4/22/14 at 158-159, 209-210, 212; 4/23/14 at 105-106; 4/24/14 at 112. Quattlebaum eventually left the house, remaining across the street next to his parked car. N.T. 4/23/14 at 106.

Approximately an hour later, Bowie and Maxwell left the Frazier home, heading south on 20th Street towards Nedro Street. N.T. 4/24/14 at 114-115. Defendant and Quattlebaum were both present on the street when Bowie and Maxwell left.[6] N.T. 4/23/14 at 107; 4/24/14 at 114, 116. Ashlaterra, noticing a jeep with its lights off following Bowie and Maxwell, called Bowie and Maxwell back into the house. N.T. 4/22/14 at 160; 4/23/14 at 107, 112; 4/24/14 at 113-118. Bowie and Maxwell then made arrangements for Anthony Powell to pick them up in Powell's car. N.T. 4/23/14 at 107, 205-207; 4/24/14 at 118. At approximately 1:15 a.m. on February 2, 2013, Bowie and Maxwell again left the home, heading north on 20th Street towards Champlost Street and cutting through a parking lot to where their ride was presumably waiting. N.T. 4/22/14 at 161; 4/23/14 at 107-108, 113; 4/24/14 at 118-119. Defendant and Quattlebaum were again both present on the street when Bowie and Maxwell left the second time. N.T. 4/23/14 at 107, 115; 4/24/14 at 119-120. Defendant's sister, Lorraine Cummings, was also present on the street.[7] N.T. 4/22/14 at 192-193; 4/25/14 at 217. As Bowie and Maxwell left, defendant followed on the far side of the street with a firearm in his waistband. N.T. 4/23/14 at 107, 115, 154; 4/24/14 at 119-120.

After Bowie and Maxwell entered the parking lot, Quattlebaum fired a shot in their direction. N.T. 4/22/14 at 202-206, 208-209; 4/23/14 at 94-96, 116, 150-151; 4/24/14 at 120-122. Defendant then ran back towards Quattlebaum and began shooting his firearm as well. N.T. 4/23/14 at 117; 4/24/14 at 120. Quattlebaum and defendant then exchanged gunfire with Marquis Gordon, who was located at the east end of the parking lot and in possession of a 9 millimeter pistol. N.T. 4/22/14 at 98, 134, 202, 205-206; 4/23/14 at 94-96; 116-117; 4/24/14

---

[3] Ashlaterra Frazier was also known as "China." N.T. 4/22/14 at 153. Because the Frazier sisters all share the same last name, they will be referred to throughout this opinion by their first names.
[4] Mark Bowie was also known as Dope. N.T. 4/23/14 at 104.
[5] John Maxwell was also known as "Siph." N.T. 4/25/14 at 128; Commonwealth Exhibit C-42.
[6] Defendant was also known as "Pud." N.T. 4/22/14 at 165; 4/25/14 at 20-21.
[7] Lorraine Cummings was also known as Ieisha Cummings. N.T. 4/22/14 at 188. 192

3

at 123, 206. Gordon had shot and struck Quattlebaum's car three times, while Gordon was struck once in the chest. N.T. 4/23/14 at 23, 265; 4/24/14 at 93-96. After the exchange of gunfire, defendant's sister, Cummings, told both men to "pick up the shells" and Quattlebaum and defendant left the area in Quattlebaum's vehicle. N.T. 4/22/14 at 166, 217; 4/23/14 at 118; 4/24/14 at 125.

Police Officer Thomas Dempsey was approximately half a block east from the shooting scene, taking a report on an automobile accident, when he heard a series of three to four gunshots from the direction of Opal Street. N.T. 4/22/14 at 97. After hearing the shots, Officer Dempsey heard a male voice say "Come on, let's get out of here." N.T. 4/22/14 at 97. Officer Dempsey immediately called for police support and drove to Opal Street. N.T. 4/22/14 at 97-98. Officer Anthony Ferriola was approximately three blocks south of the shooting scene when he too heard the gunfire. N.T. 4/22/14 at 132. Upon arriving at the middle of the 5900 block of Opal Street, Officers Dempsey and Ferriola observed Gordon laying face down on the sidewalk with a small black handgun lying next to him. N.T. 4/22/14 at 98, 109-110, 134. Emergency personnel arrived on the scene shortly thereafter and Gordon was rushed to the hospital where he was later pronounced dead as a result of a single gunshot wound to the chest. N.T. 4/22/14 at 99, 126; 4/23/14 at 31. Police recovered four 9 mm fired bullet casings and a 9 mm gun at the scene where Gordon was found. N.T. 4/22/14 at 111; 4/24/14 at 63.

Trial Court Opinion, filed February 10, 2015, at pp. 2-5.

## II. DISCUSSION

An appellate court's review of a PCRA court's grant or denial of relief "is limited to determining whether the court's findings are supported by the record and the court's order is otherwise free of legal error." *Commonwealth v. Green*, 14 A.3d 114, 116 (Pa. Super. Ct. 2011) (internal quotations omitted). The reviewing court "will not disturb findings that are supported by the record." *Id.*

Here, defendant's claims pertain to the alleged ineffective assistance of counsel. Under Pennsylvania law, counsel is presumed to be effective and the burden to prove otherwise lies with the petitioner. *Commonwealth v. Reid*, 99 A.3d 427, 435 (Pa. 2014). To obtain collateral relief based on the ineffective assistance of counsel, a petitioner must show that counsel's representation fell below accepted standards of advocacy and that as a result thereof, the

4

petitioner was prejudiced. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). In Pennsylvania, the *Strickland* standard is interpreted as requiring proof that: (1) the claim underlying the ineffectiveness claim had arguable merit; (2) counsel's actions lacked any reasonable basis; and (3) the ineffectiveness of counsel caused the petitioner prejudice. *Commonwealth v. Miller*, 987 A.2d 638, 648 (Pa. 2009) (citing *Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987)). To satisfy the third prong of the test, the petitioner must prove that, but for counsel's error, there is a reasonable probability that the outcome of the proceeding would have been different. *Commonwealth v. Sneed*, 899 A.2d 1067, 1084 (Pa. 2006) (citing *Strickland*, 466 U.S. at 694). If the PCRA court determines that any one of the three prongs cannot be met, then the court need not hold an evidentiary hearing as such a hearing would serve no purpose. *Commonwealth v. Jones*, 942 A.2d 903, 906 (Pa. Super. Ct. 2008), *appeal denied*, 956 A.2d 433 (Pa. 2008).

Defendant claims that trial counsel was ineffective because counsel argued that defendant did not commit the shooting rather than argue that defendant committed the shooting in self-defense or under an unreasonable belief that he was acting in self-defense. To succeed on this claim, defendant has the burden to demonstrate that counsel's decision lacked any reasonable basis. Accordingly, defendant "must prove that the strategy employed by trial counsel 'was so unreasonable that no competent lawyer would have chosen that course of conduct,'" *Commonwealth v. Rega*, 933 A.2d 997, 1019 (Pa. 2007) (quoting *Commonwealth v. Williams*, 640 A.2d 1251, 1265 (Pa. 1994)), or that a self-defense argument "offered a potential for success substantially greater than" the argument counsel used. *Commonwealth v. Clark*, 626 A.2d 154, 157 (Pa. 1993).

5

Here, the record establishes that trial counsel had compelling reasons to argue that defendant never shot anyone, and never even possessed a firearm on the night of the shooting, and therefore, was not guilty of all charges. In particular, the defense was able to produce three witnesses in support of this defense. First, Michele Wall testified that defendant knocked on her door for a cigarette right before the shootings here at issue. N.T. 4/25/14 at 161. She stated that when she opened the door and went to give defendant a cigarette, numerous shots rang out as she and defendant stood there together. N.T. 4/25/14 at 161. Ms. Wall further testified that she did not see defendant with any weapons at the time. N.T. 4/25/14 at 168. Similarly, Darren Ward testified that he ate dinner with defendant and dropped him off near some of Ward's friends shortly before the shootings. N.T. 4/25/14 at 180-185. According to Ward, defendant did not appear to have any weapons on him. N.T. 4/25/14 at 184-185. Finally, Saundra Hannibal, defendant's mother, testified that defendant came into her house right after she heard the shootings, and he was not in possession of any weapons. N.T. 4/25/14 at 201.

It is true that defendant gave a statement to police that was inconsistent with the testimony of the three defense witnesses, in that he admitted that he was in possession of a gun and fired it on the night in question. However, his statement did not support a self-defense theory. Self-defense is an affirmative defense to a charge of first-degree murder and a charge of third-degree murder. *See, e.g., Commonwealth v. Rivera*, 983 A.2d 1211, 1221 (Pa. 2009) (first-degree murder); *Commonwealth v. Truong*, 36 A.3d 592, 599 (Pa. Super. Ct. 2012), *app. denied*, 57 A.3d 70 (Pa. 2012) (third-degree murder). The elements of the defense have been summarized by our Supreme Court as follows:

> [A] claim of self-defense (or justification, to use the term employed in the Crimes Code) requires evidence establishing three elements: (a) [that the defendant] reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent

6

such harm; (b) that the defendant was free from fault in provoking the difficulty which culminated in the slaying; and (c) that the [defendant] did not violate any duty to retreat. Although the defendant has no burden to prove self-defense ...before the defense is properly in issue, there must be some evidence, from whatever source, to justify such a finding. Once the question is properly raised, the burden is upon the Commonwealth to prove beyond a reasonable doubt that the defendant was not acting in self-defense.

*Commonwealth v. Mouzon*, 53 A.3d 738, 740 (Pa. 2012) (internal citations omitted).[8]

Deadly force is defined as "[f]orce which, under the circumstances in which it is used, is readily capable of causing death or serious bodily injury." 18 Pa.C.S. § 501.

Here, defendant told police in his statement that he was out on the block when he heard gunshots and then ran to his house. N.T. 4/25/14 at 22. He further stated that as he was trying to get in the door to his house, he fired off a shot in the direction from which he heard the gunfire. N.T. 4/25/14 at 22. There is nothing in defendant's statement to suggest that anyone was firing at him, or that he was in any way protecting himself from imminent danger by firing off a shot down the block at no one in particular as he entered the safety of his house. For this reason, the statement did not give defense counsel a basis to argue self-defense. As a result, defense counsel was required to challenge the alleged statement regardless of the defense that he offered.[9]

Similarly, the statement did not support the theory that defendant was acting with an unreasonable belief that he was acting in self-defense. Murder may be reduced to voluntary manslaughter if "[defendant] knowingly and intentionally kills an individual under the unreasonable belief that the killing was justified." *Commonwealth v. Rivera*, 983 A.2d 1211, 1218 n. 6 (Pa. 2009) (internal citations and quotations omitted). This form of voluntary

---

[8] The Crimes Code was amended to modify the elements of self-defense, effective August 27, 2011, prior to the date of the killing here at issue. Although *Mouzon* addressed a killing that was prior to the effective date of the amendments, none of the amended provisions apply to the case at bar.
[9] Counsel argued in his closing that the statement was not to be believed based on the circumstances under which it was taken, the absence of a video, and that defendant stated that his gun was .40 caliber, when no .40 caliber fired cartridge casings were recovered. N.T. 4/28/14 at 87-88, 97-98.

manslaughter "has been colloquially referred to as 'imperfect self-defense.'" *Id.* at 1218 n.6 (citing *Commonwealth v. Tilley*, 595 A.2d 575, 582 (Pa. 1991)). For imperfect self-defense to apply, all of the elements of self-defense must be present except for one: that the defendant's belief that it was necessary to use deadly force was reasonable. *See Commonwealth v. Sepulveda*, 55 A.3d 1108, 1124-25 (Pa. 2012).

Here, there was nothing in defendant's statement to support a claim that he believed that in order to protect himself, he needed to fire off a shot at no one in particular just as he entered his home. Therefore, the statement did not support an imperfect self-defense argument.

Accordingly, defendant's statement to police, which was offered into evidence by the Commonwealth, did not support a defense to the homicide charges. Moreover, there was no other evidence in the case that supported a self-defense or imperfect self-defense claim. Under these circumstances, counsel's decision to call three witnesses to prove that defendant was unarmed and not a shooter was entirely reasonable, and a self-defense or imperfect self-defense argument did not offer a potential for success substantially greater than the argument counsel used.

As for counsel's failure to raise defendant's current claim in post-sentence motions or on his direct appeal, it is well-settled that absent extraordinary circumstances not present here, claims of ineffective assistance of trial counsel may not be raised on post-sentence motions or on direct appeal, and must await review under the PCRA. *See Commonwealth v. Holmes*, 79 A.3d 562, 563-64 (Pa. 2013). Accordingly, counsel could not have been ineffective for failing to raise such a claim in a post-sentence motion or on direct appeal. No relief is due.

8

## III. CONCLUSION

For all of the foregoing reasons, the Court's order dismissing defendant's PCRA petition should be affirmed.

BY THE COURT:

GLENN B. BRONSON, J.

9